**ALLSTATE INSURANCE COMPANY,** Allstate Indemnity Company, Farmers Insurance Exchange, Truck Insurance Exchange, Mid-Century Insurance Company, State Farm Mutual Automobile Insurance Company, and State Farm Fire and Casualty Company, Appellants (Petitioners),

v.

**WYOMING INSURANCE DEPARTMENT,** J.T. Langdon, as Insurance Commissioner of the State of Wyoming, and Thomas E. Power, as Hearing Officer for the Wyoming Insurance Department, Appellees (Respondents).

No. 83–52.

Supreme Court of Wyoming.

Nov. 18, 1983.

John A. Sundahl and George E. Powers, Jr., of Godfrey & Sundahl, Cheyenne, for appellants.

A.G. McClintock, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., John W. Renneisen, Sr. Asst. Atty. Gen., Kelly S. Davis, Sp. Asst. Atty. Gen., Cheyenne, for appellees.

Before ROONEY, C.J., and THOMAS, ROSE, BROWN and CARDINE, JJ.

ROSE, Justice.

On February 11, 1983 the district court affirmed administrative orders of the hearing officer for the Wyoming Insurance Department dated December 13, 1982 and December 28, 1982. The hearing officer's decisions upheld and affirmed an earlier order of the Wyoming Insurance Department which, on May 25, 1982, had the effect of withdrawing—for compulsory-insurance compliance purposes—the insurance commissioner's prior approval of all automobile liability-policy forms containing what is known in the insurance business as the "household exclusion clause." The policy forms in question contain household-exclusion language which excepts coverage from any loss to any insured or any spouse, relative or member of the family of an insured residing in the same household as the insured. It is stipulated that the exclusion clauses in the policies encompass persons who fall outside of and are in addition to the husband-and-wife, and parent-and-child categories, for which some courts have held that common-law immunity has traditionally existed. The hearing officer in his order of December 13, 1982, found and concluded that the household-exclusion clauses contained in the appellant insurance companies' liability policies are not excepted by statute.[1] He went on to reason that the policies therefore violate the plain language of the statutes and the public policy of the state of Wyoming as that language and public policy are contained in the compulsory insurance statute, § 31–4–120, W.S.1977, 1983 Cum.Supp., when the motor vehicle safety responsibility act, § 31–9–101, et seq., W.S.1977, (hereinafter referred to as the financial responsibility law), the compulsory insurance statute, § 31–4–120, supra, and the uninsured motor vehicles act, § 31–10–101, et seq., W.S.1977, are considered together.

The December 13 order made reference to the fact that the legislature, under the compulsory insurance statute, had directed that all motor vehicle owners in the state who operate or permit the operation of a motor vehicle must have an acceptable bond in effect or be insured against bodily-injury and property-damage liability. The automobile liability-insurance provision of § 31–4–120(a), W.S.1977, says:

"(a) No owner of a motor vehicle required to be licensed shall operate or permit the operation of the vehicle without having in full force and effect an automobile liability policy as provided by W.S. 31–9–403 * * *."[2]

The hearing officer found that the household-exclusion clause had the effect of eliminating the minimum liability security

---

1. In his Conclusions of Law, the hearing officer said:

    "There is no place in the statutes, and counsel for Petitioners has not pointed to any, which authorizes the exception Petitioners have in their policies. For example, the legislature permits exclusion of coverage for the insured in instances subject to workmen's compensation and in liability involving an employee of the insured while engaged in employment as well as other exclusions. W.S. 31–9–405(e). The legislature has not permitted exclusion of coverage for liability to a member of the insured's household. Likewise, there is no exclusion in the Unin-sured Motor Vehicle Insurance Act for relatives."

2. Section 31–9–403, W.S.1977 of the financial responsibility law provides in pertinent part:

    "Certificate of insurance carrier.

    "(a) Proof of financial responsibility may be furnished by filing with the superintendent the written certificate of any insurance carrier duly authorized to do business in this state certifying *that there is in effect a motor vehicle liability policy for the benefit of the person required to furnish proof of financial responsibility.*"  (Emphasis added.)

which is mandated by § 31–9–405(b)(ii) and § 31–9–102(a)(x), W.S.1977 of the financial responsibility law and § 31–10–101 of the uninsured motor vehicles act,[3] and, to the extent of such minimum coverage, was void for any purposes contemplated by the compulsory insurance statute.[4] The rule of *Alm v. Hartford Fire Insurance Company,* Wyo., 369 P.2d 216 (1962), to which the hearing officer had reference, supra n. 4, holds that the parties have the right to embody in their insurance contracts whatever lawful terms they wish. It was his judgment that the companies remained free to include in their policies any such provisions as were not inconsistent with the public policy and the statutes of the state of Wyoming.

In response, it is the contention of the appellant insurance companies that there is in fact an exception to Wyoming's compulsory-insurance mandate which is made applicable through the provisions of § 31–9–405(b)(ii) and (c), supra n. 3, and the uninsured motor vehicles act, § 31–10–101, supra. These statutes provide in relevant part that the vehicle owner's policy of liability insurance need only insure the named and other insureds "against [or from] loss from the liability imposed by law," and that policies containing the household exclusionary clauses do in fact furnish the required coverage.

The insurance companies reason this way:

When the compulsory insurance statute (§ 31–4–120(a)) speaks of the automobile owner being possessed of such a public liability policy as is contemplated by § 31–9–403, supra n. 2, of the financial responsibility law, the legislature intended that the liability policy need only contain such cover-

---

**3.** Section 31–9–405, W.S.1977 of the financial responsibility law reads in pertinent part as follows:

"(a) A 'motor vehicle liability policy' *as said term is used in this act* [§§ 31–9–101 to 31–9–414] shall mean an owner's or an operator's policy of liability insurance, certified as provided in section 19 [§ 31–9–403] or section 30 [§ 31–9–404] *as proof of financial responsibility, and issued, except as otherwise provided in section 20, by an insurance carrier duly authorized to transact business in this state, to or for the benefit of the person named therein as insured.*

"(b) Such owner's policy of liability insurance:

    \*    \*    \*    \*    \*    \*

"(ii) Shall insure the person named therein and any other person, as insured, using any such motor vehicle or motor vehicles with the express or implied permission of such named insured against loss *from the liability imposed by law* for damages arising out of the ownership, maintenance or use of such motor vehicle or motor vehicles within the United States of America or the Dominion of Canada, subject to limits exclusive of interest and costs with respect to each such motor vehicle, as follows: ten thousand dollars ($10,000.00) because of bodily injury to or death of one (1) person in any one (1) accident and, subject to said limit for one (1) person, twenty thousand dollars ($20,000.00) because of bodily injury to or death of two (2) or more persons in any one (1) accident and five thousand dollars ($5,000.00) because of injury to or destruction of property of others in any one (1) accident.

"(c) Such operator's policy of liability insurance shall insure the person named as insured therein against loss *from the liability imposed upon him by law* for damages arising out of the use by him of any motor vehicle not owned by him \* \* \*." (Emphasis added.)

Section 31–9–102(a)(x), W.S.1977 contemplates the same minimum requirements as § 31–9–405(b)(ii). The uninsured motor vehicles act, § 31–10–101, et seq., refers to the minimum requirements of § 31–9–102(a)(x), and provides that no policy insuring against "liability imposed by law" shall be delivered or issued "unless coverage is provided therein \* \* \* in limits \* \* \* as set forth in § 31–9–102(a)(x)."

**4.** In his Conclusion of Law # 9, the hearing officer said:

"Thus, finding automobile liability insurance to be mandatory and finding that uninsured motorist coverage must be offered, and finding no authority for excluding a class of persons (i.e., *household residents) from the pro-*tection of these laws, the Hearing Officer must affirm the order of the Insurance Department. One caveat. *The Financial Responsibility Law and the Uninsured Motorists Act contain mandatory minimums only. Accordingly, I conclude as a matter of law that the 'household exclusion' contravenes those statutes only up to the amounts therein provided. Thus, upon the authority of Alm v. Hartford Fire Ins. Co., [infra] the household exclusion of Petitioners is invalid only to the extent of the minimum statutory liability or coverage limits."* (Emphasis added.)

age as is envisioned by the financial responsibility law taken as a whole, including § 31–9–405(b)(ii) and (c) of that act (supra, n. 3), as well as the language of the uninsured motor vehicles act, and that any exclusions which are there contained and applicable to these provisions of the statute are, therefore, applicable to the compulsory insurance statute. It follows—say the appellants—that, if insurance policies containing the household exclusion are acceptable to the financial responsibility law and the uninsured motor vehicles act, they are, therefore, certifiable for compulsory—insurance purposes. This conclusion is reached through a course of logic which goes like this: Since this court has adopted the intra-family and inter-spousal immunity doctrine,[5] the same policies which contained the household exclusionary clauses and were satisfactory for all purposes under the financial responsibility law and uninsured motor vehicles act, are also adequate for purposes of complying with the compulsory insurance statute for the reason that there is no possibility of "loss from the liability imposed by law" under either the financial responsibility law or the uninsured motor vehicles act as regards these family-household categories of individuals.

It follows, say the appellant companies, that the household-exclusion clauses of the policies are compatible with this court's immunity decisions and, therefore, with the public policy announced in the compulsory insurance statute.

The insurance companies identify these following issues for our appellate consideration:

"I. DOES THE FAMILY EXCLUSION CLAUSE VIOLATE THE PUBLIC POLICY OF THE STATE OF WYOMING AS EMBODIED IN THE MOTOR VEHICLE SAFETY–RESPONSIBILITY ACT?

"II. DOES THE FAMILY EXCLUSION CLAUSE VIOLATE THE PUBLIC POLICY OF THE STATE OF WYO-MING AS EMBODIED IN THE COMPULSORY INSURANCE STATUTE?

"III. DOES THE FAMILY EXCLUSION CLAUSE VIOLATE THE PUBLIC POLICY OF THE STATE OF WYOMING AS EMBODIED IN THE UNINSURED MOTORIST ACT?"

We perceive the main issue for decision to be more succinctly stated as follows:

Does the "loss from the liability imposed by law" language of the financial responsibility law and the uninsured motor vehicles act constitute an exception to the minimum coverage mandated by the compulsory insurance statute?

For purposes of this opinion, we agree with the insurance companies that all relevant provisions of both the financial responsibility law and the uninsured motor vehicles act must be considered together when ascertaining the public policy which has been announced by the legislature through the enactment of the compulsory insurance statute. This means that the "liability imposed by law" language of both the financial responsibility law and the uninsured motor vehicles act must be taken into account when attempting to identify the public policy contained in the compulsory law. In undertaking our task, we must decide whether or not this language of the financial responsibility law and the uninsured motor vehicles act was intended to embrace inter-spousal and intra-family immunity in such a way as to effectively structure an exception to the compulsory insurance statute which contemplates that *all* owners of motor vehicles will be insured.

We will affirm and hold that the compulsory-insurance provisions of the Wyoming statute (§ 31–4–120, supra), when considered together with the financial responsibility law (§ 31–9–101, et seq., supra) and the uninsured motor vehicles act (§ 31–10–101, supra), identify an overriding public policy which requires that automobile public-liability and property-damage insurance policies issued in purported compliance

---

5. See *McKinney v. McKinney,* 59 Wyo. 204, 135 P.2d 940 (1943); *Ball v. Ball,* 73 Wyo. 29, 269 P.2d 302 (1954); *Oldman v. Bartshe,* Wyo., 480 P.2d 99 (1971); and *Vossler v. Peterson,* Wyo., 480 P.2d 393 (1971).

with the compulsory insurance statute, § 31–4–120, supra, must—to the extent of such minimum liability security as is identified in §§ 31–9–405(b)(ii) and 31–9–102(a)(x), supra—cover *all* owners of motor vehicles who operate or permit the operation of their motor vehicles in Wyoming. Further, we will hold that no Wyoming statutes, nor any controlling Wyoming case law, make any such exceptions to the mandatory requirements of the compulsory-insurance provisions of § 31–4–120, supra, as are contemplated by the household-exclusion clauses contained in the insurance companies' policies.

In coming to these conclusions, we observe that, in Wyoming, the degree of protection afforded the motoring public and the requirements imposed on vehicle owners in order to maintain that degree of protection are embodied in the compulsory insurance statute (§ 31–4–120, supra), the financial responsibility law (§ 31–9–101 et seq., supra), and the uninsured motor vehicles act (§ 31–10–101 et seq., supra). The three acts must be considered together, keeping in mind the overriding public policy as announced in the compulsory insurance statute, the most recently enacted of the three statutes. Since the exceptions to the liability-insurance requirements set out in § 31–9–405(e), W.S.1977,[6] do not conflict with the public policy of protecting the motoring public, these exceptions legitimately limit the coverage required by the compulsory insurance statute. However, the § 31–9–405(e) exceptions and the exception for self-insurers expressed in § 31–4–120(c), W.S. 1977, 1983 Cum.Supp., itself are the only exceptions to liability-insurance coverage which can be found or read into the compulsory motor vehicle insurance statute, without violating public policy.

The effect of this holding is to find that Wyoming's compulsory insurance statute overrules the former holdings of this court

which recognize intra-family and interspousal immunity to and including the minimum requirements contained in the financial responsibility law and the uninsured motor vehicles act. In consequence, the household-immunity clauses of the appellants' policies—to the extent of the aforesaid minimum requirements—are rendered void and of no force and effect.

## THE PUBLIC POLICY OF THE STATE OF WYOMING IS AS ANNOUNCED IN THE COMPULSORY INSURANCE STATUTE, § 31–4–120, W.S. 1977, 1983 CUM.SUPP., AND, TO THE EXTENT OF THE MINIMUM REQUIREMENTS CONTEMPLATED BY THE STATUTE, NEITHER THIS STATUTE, NOR ANY OTHER STATUTE, NOR APPLICABLE COURT DECISIONS CONSTITUTE OR ENVISION CONSTITUTE OR ENVISION SUCH EXCEPTIONS AS WILL RENDER VALID THE HOUSEHOLD EXCLUSIONS CONTAINED IN THE POLICIES OF THE APPELLANTS

Our identification of the compelling public policy will point our way to decision in this appeal. Since it is urged that the language of the financial responsibility law and the uninsured motor vehicles act constitutes exceptions to the compulsory-insurance mandate, we are confronted with a question of statutory interpretation as we search for the prevailing public policy.

This court has no difficulty in coming to the conclusion that the language of § 31–4–120(a), supra, describes the legislature's public-policy position on the subject of automobile liability insurance and the family-immunity doctrine does not constitute an exception to this public policy. The compulsory insurance statute says that *no owner* shall operate or permit the operating of a vehicle required to be licensed without having liability insurance. The only exceptions

---

**6.** Section 31–9–405(e), W.S.1977 provides:

"Such motor vehicle liability policy shall not insure any liability under any workmen's compensation law nor any liability on account of bodily injury to or death of an employee of the insured while engaged in the

employment, other than domestic, of the insured, or while engaged in the operation, maintenance or repair of any such motor vehicle nor any liability or damage to property owned by, rented to, in charge of or transported by the insured."

to this requirement are specifically spelled out in the compulsory insurance statute and the financial responsibility law. These exceptions contemplate only those situations where the owner is self-insured, where workers' compensation considerations are taken into account, where an employer-employee relationship exists, and where such other circumstances as are specifically set out in § 31–9–405(e), supra n. 6, are found to be present. There are no other statutory exceptions which can be found or read into the compulsory insurance statute.

As can be seen, the foregoing groups of exceptions do not include the persons and classes of persons embraced by the household-exclusion clauses contained in the policies of the appellant insurance companies. It therefore follows that for this court to give effect to the household-exclusion provisions of the appellants' policies in face· of the mandatory automobile liability insurance provisions of the compulsory insurance statute would be for us to render the excluded motor vehicle owner uninsured where suits are brought by household family members. The effect of such a decision would be to violate the statutes and public policy of the state of Wyoming and, in many instances, to immunize insureds against rights of action which might otherwise lie.[7]

*The Law*

The Public Policy

The key to our decision will be found in our identifying and giving force and effect to the public policy of the state of Wyoming as that public policy is announced through the compulsory insurance statute, § 31–4–120(a), which, as we have seen, provides:

"No owner of a motor vehicle required to be licensed shall operate or permit the operation of the vehicle without having in full force and effect an automobile liability policy as provided by W.S. 31–9–403 or bond in amounts provided by W.S. 31–9–102(a)(x)."

Public-policy identification is indispensable to the decision-making process here because, even though the compulsory insurance statute provides that *all owners* of motor vehicles will be possessed of automobile liability insurance, the insurance companies say that this public-policy pronouncement is subject to the family-exclusion exception contained in the "against loss from the liability imposed by law" language of the financial responsibility law and the uninsured motor vehicles act. We hold to˙ the contrary, based upon what we perceive to be the overriding public policy as announced in the compulsory insurance statute, which says that *all* motor vehicle own-

---

**7.** It is to be remembered and understood that the household exemptions of the appellants' policies include more individuals and classes of individuals than those who fall within the parental- and spousal-immunity categories. An excerpt from the appellee's brief describes the scope of the exclusions, where it is said:

"The family clause used by each of the Appellant insurance companies is broad in scope, going beyond the traditional spousal and parental immunities. It is the uniform law of the land that, 'the fact of relationship by blood or marriage, other than that of parent and child or husband and wife between the tortfeasor and the person injured or killed, does not preclude maintenance of an action for the redress of such injuries.' Annot., 123 A.L.R. 1020, 1021; see Annot., 81 A.L.R.2d 1155. Clearly, in Wyoming immunity does not exist beyond the spousal or parental relationship. Individuals related beyond the husband/wife or parent/child level

are free to bring suit in our courts. See *Fox v. Fox* [75], Wyo. [390], 296 P.2d 252 (1956). It is impermissive to exclude coverage solely because the claimant is a relative of the insured. *Farmers Insurance Exchange v. Teachers Insurance Company*, 161 Cal.Rptr. 738, 101 Cal.App.3d 804 (1980). Even if Wyoming had full spousal and parental immunities, the Appellant insurance companies' family exclusion clauses limit or deny protection to other members of the insured's family including inlaws, siblings, grandparents, aunts, uncles and cousins, all of whom would have a right to maintain a lawsuit. As to these individuals, the insured cannot comply with the compulsory insurance law of Wyoming. As to these individuals, a Wyoming motor vehicle owner seeking to comply with the law by purchasing a motor vehicle liability policy from the Appellant companies stands unprotected by virtue of the broad family exclusion clauses. He is subject not only to financial loss but also criminal sanctions."

ers will be covered by liability insurance— not just some of them.

It was said in *Mutual of Enumclaw Insurance Company v. Wiscomb,* 25 Wash. App. 841, 611 P.2d 1304, 1307 (1980):

> " 'Public policy is a term not easily defined. Its significance varies as the habits and needs of a people may vary. It is not static and the field of application is an ever increasing one. A contract, or a particular provision therein, valid in one era may be wholly opposed to the public policy of another .... Courts keep in mind the principle that the best interests of society demand that persons should not be unnecessarily restricted in their freedom to contract. But they do not hesitate to declare void as against public policy contractual provisions which clearly tend to the injury of the public in some way.'
>
> "*Henningsen v. Bloomfield Motors, Inc.,* 32 N.J. 358, 161 A.2d 69, 94–95 (1960), quoted with approval in *Baker v. Seattle,* 79 Wash.2d 198, 200–01, 484 P.2d 405 (1971). See also *McCutcheon v. United Homes Corp.,* 79 Wash.2d 443, 486 P.2d 1093 (1971)."

■ While the parties to an insurance contract have the right to embody in the policy such lawful terms as they wish, *Alm v. Hartford Fire Insurance Company,* supra, the insurance agreement must not conflict with pertinent statutes or public policy. *McKay v. Equitable Life Assurance Society of the United States,* Wyo., 421 P.2d 166 (1966); *Cincinnati Insurance Company v. Mallon,* 409 N.E.2d 1100 (Ind.App.1980). In the case last mentioned, the Indiana appellate court put the rule this way:

> "An insurance company is free to determine by its contract what risks it is undertaking to insure, *provided policy provisions do not violate statutory mandates or are not against public policy.* As summarized in 43 Am.Jur.2d, *Insurance* § 279:
>
> " '[S]ince the parties to an insurance contract may make the contract in any legal form they desire, insurance companies have, *in the absence of statutory*

*provisions to the contrary,* the same right as individuals to limit their liability and to impose whatever conditions they please upon their obligations, *not inconsistent with public policy.* Consequently, if such exceptions, exclusions and limitations are plainly expressed, insurers are entitled to have them construed and enforced as expressed.' " (Emphasis added.) 409 N.E.2d at 1103.

In *Mutual of Enumclaw Insurance Company v. Wiscomb,* supra, 611 P.2d at 1307,

> "Traditionally, insurance contracts have been considered to be private contracts between the parties. *Sears, Roebuck & Co. v. Hartford Accident and Indem. Co.,* 50 Wash.2d 443, 313 P.2d 347 (1957); *Vandivort Constr. Co. v. Seattle Tennis Club,* 11 Wash.App. 303, 522 P.2d 198 (1974). As private contractor, the insurer was permitted to limit its liability *unless inconsistent with public policy or statute. Trinity Universal Ins. Co. v. Willrich,* 13 Wash.2d 263, 124 P.2d 950 (1942); 7 S. Williston, Contracts § 900, at 28 (3d ed. 1963); 7 G. Couch, Cyclopedia of Insurance Law § 36:49 (2d ed. 1961); 44 C.J.S. Insurance § 241 (Supp.1979)." (Emphasis added.)

With respect to public-policy considerations, the Washington appellate court went on to say:

> " * * * Because of the important policy considerations inherent in excluding coverage to large classes of persons, courts strictly scrutinize exclusions to see whether they comport with public policy. See *Touchette v. Northwestern Mut. Ins. Co.,* 80 Wash.2d 327, 494 P.2d 479 (1972)." 611 P.2d at 1307.

### Public Policy and Compulsory Insurance

The public-policy pronouncements of a legislative enactment will be ascertained by looking to the purpose of the law. The purpose of compulsory automobile liability insurance

> " * * * is to protect members of the general public injured on the highways through the operation of the covered motor vehicle, by giving them security for

the payment of their damages." Couch on Insurance 2d, § 45:682, p. 319.

It is said in 7 Am Jur 2d, Automobile Insurance § 22, p. 468:

"Compulsory liability insurance is principally designed to protect travelers and to provide compensation to persons injured as a result of the negligent operation of motor vehicles, rather than to protect the motor vehicle operator from loss, through making vehicle registration conditional upon a showing by the registrant that he has liability insurance coverage on that vehicle."

### Construction of Compulsory Insurance Statutes and Policies

A compulsory liability policy is to be construed most strongly against the insurer— that is, such statutes as those with which we are here concerned must be liberally or broadly construed in favor of the insured in order to accomplish its purpose. Couch on Insurance 2d, supra, Automobile Insurance § 45:692, p. 330.[8] Any ambiguities will be construed against the insurer.[9] It is uniformly held that the compulsory insurance statutes and policies issued thereunder must be construed in the light of the purpose and public policy of the statute and liberally to advance the aim sought. Couch on Insurance 2d, supra, § 45:692, p. 330. The policy and the compulsory insurance statute relating thereto must be read and construed together as though the statute were part of the contract, and it has been said:

"A policy of insurance must be construed to satisfy the provisions of the law by which it was required, particularly when the policy specifies that it was issued to conform to the statutory requirement; and where an insurance policy has been issued in pursuance of the requirement of

a statute which forbids the operation of a motor vehicle until good and sufficient security has been given, the court should construe this statute and the policy together in the light of the legislative purpose." Couch on Insurance 2d, supra, § 45:694, p. 332.

Finally, the aforesaid writer says that "[t]he statute is manifestly superior to and controls the policy; and its provisions supersede any conflicting provisions of the policy." Couch on Insurance, 2d, supra, § 45:697, p. 334.

### Exclusions and Exemptions

Recalling that there are certain exemptions which *are* specified in the statutes (see §§ 31-4-120, supra, and 31-9-405(e)), supra n. 6, while the exception for which the companies contend is not mentioned, it is worthwhile calling up the rule of construction that says:

"The express mention of one thing implies the exclusion of other similar things." *Citizens Mutual Insurance Company v. Central National Insurance Company of Omaha,* 65 Mich.App. 349, 237 N.W.2d 322 (1975).

We said in *Town of Pine Bluffs v. State Board of Equalization,* 79 Wyo. 262, 333 P.2d 700, 708 (1958):

"We have another rule which in effect is similar to the rule already mentioned as applied to the case, namely:

"'* * * where a statute enumerates the subject or things on which it is to operate, or the persons affected, or forbids certain things, it is to be construed as excluding from its effect all those not expressly mentioned * * *.' 82 C.J.S. Statutes § 333."

---

8. See: *Keystone Mut. Casualty Co. of Pittsburgh, Pa. v. Hinds,* 180 Md. 676, 26 A.2d 761 (1942); *Desmarais v. Standard Acc. Ins. Co.,* 331 Mass. 199, 118 N.E.2d 86 (1954); *Wood v. Vona,* 147 Ohio St. 91, 33 Ohio Ops. 264, 68 N.E.2d 80 (1946); *Leonard v. Murdock,* 147 Ohio St. 103, 33 Ohio Ops. 260, 68 N.E.2d 86 (1946); *Ferguson v. Employers Mutual Casualty Company,* 254 S.C. 235, 174 S.E.2d 768 (1970).

9. Couch on Insurance 2d, supra at p. 330, citing *MacQuarrie v. McLaughlin,* D.C.Mass., 294 F.Supp. 176, aff'd 394 U.S. 456, 89 S.Ct. 1224, 22 L.Ed.2d 417 (1968); *Canavan v. Hanover Insurance Company,* 356 Mass. 88, 248 N.E.2d 271 (1969); and *Ferguson v. Employers Mutual Casualty Company,* 254 S.C. 235, 174 S.E.2d 768 (1970).

*The Financial Responsibility Law, the Uninsured Motor Vehicles Act and the Compulsory Insurance Statute Compared*

In attempting to ascertain whether or not the family exclusion urged by the companies may be said to be contemplated as integral to the public policy announced through the compulsory insurance statute, we must compare the purpose of the compulsory insurance statute with the purpose of the financial responsibility law and the uninsured motor vehicles act. When we make this comparison, it will readily be seen that the financial responsibility law, the uninsured motor vehicles act and the compulsory insurance statute were intended to serve distinct and separate purposes and—where a family household exclusion might be acceptable as the public policy of the state for uninsured-motorist and financial-responsibility purposes—this could not possibly be true where a compulsory-insurance mandate is concerned.

Given the purpose of the financial responsibility law as gleaned from the language of the act itself, it is necessary to conclude that, while in the restricted class of cases to which the act applies (those who have had an accident and did not carry liability insurance and culpability has been assigned by the superintendent, *Thornley v. Wyoming Highway Department,* Wyo., 478 P.2d 600 (1971), and those who carried insurance prior to the accident) the tangential beneficiary of the liability policy to be furnished can be said to be the motoring public, the law nonetheless is calculated primarily to benefit the relatively small number of drivers who have either surrendered their driving privileges and seek to reinstate them or who seek to protect their privileges from being taken away.

In the same vein, the uninsured motor vehicles act is calculated to protect a restricted category of drivers—namely, those insured owners who are involved in accidents with drivers who do not carry insurance.

Compulsory insurance, on the other hand, is intended to be but one of the conditions for driving upon the highways of the state and its purpose is to benefit the motoring public as a whole (see 7 Am Jur 2d, Automobile Insurance § 20, p. 466, infra), not just a restricted class of persons who have shown themselves to be "bad drivers" or the limited class of insured motorists who are involved in accidents with those who do not carry insurance.

Therefore, while the fallout benefits of Wyoming's financial responsibility law and the uninsured motor vehicles act may be similar to those of the compulsory insurance statute, i.e., the protection of various classes of motorists from drivers on the highways of the state, it is clear that the uninsured motor vehicles act and the financial responsibility law are intended to "benefit" a very limited category of drivers, while the compulsory insurance statute, on the other hand, is intended to protect *all* motorists who drive upon the highways of the state. It can therefore be seen that the avowed legislative purpose of the two acts is not the same and the classes of those who are intended to be benefited both in kind and in numbers are different.

Assuming this conclusion to be sound, we are then comfortable with an ultimate resolution which says that the reference to "loss from the liability imposed by law," § 31–9–405(b)(ii) and (c), supra, and the uninsured motor vehicles act, § 31–10–101, supra, cannot be held to include a prior-case-law or an insurance-industry declared-immunity theory which causes the household-exclusion clauses in the companies' policies to override the public policy announced in the compulsory insurance statute.

A more detailed comparison of the compulsory insurance statute with the financial responsibility law causes us to be even more resolute in this conclusion.

The financial responsibility law was passed in 1947, while the compulsory insurance statute was enacted in 1979. The earlier legislation was enacted to serve two purposes. The appellants' brief describes these purposes in the following way:

"The MVSRA serves a twofold purpose. First, the Act insures that anyone involved in an automobile accident will be required to demonstrate financial responsibility for any liability that may be imposed by law as a result of such an accident. Second, the Act singles out drivers, whose licenses have been either revoked or suspended under state law, and requires them to demonstrate a degree of financial responsibility before regaining the privilege of operating motor vehicles upon the highways of Wyoming."

As has been noted, the financial responsibility law does not require proof of financial responsibility until the accident has occurred, while the compulsory insurance statute requires the obtaining of a bond or the purchase of insurance *before* one may operate a vehicle upon the highways of the state.

"The procuring of [compulsory liability] insurance is merely part of the price paid for obtaining a specific privilege from the government * * *." Couch on Insurance 2d, Automobile Insurance § 45:679, p. 315.

It is said in 7 Am Jur 2d, Automobile Insurance § 20, p. 466:

"Although both compulsory liability insurance laws and financial responsibility laws relate to the same subject—financial responsibility of motorists—they are distinguishable. Financial responsibility laws generally apply to a limited class of motorists: usually those who have been involved in an accident or whose drivers' licenses have been suspended. Compulsory insurance laws, on the other hand, apply to the unlimited class of all motor vehicle owners. The activity governed differs: the financial responsibility laws apply to drivers' licenses whereas the compulsory insurance laws apply to motor vehicle registrations. Thus, the statutes generally do not overlap, and a given state may enact both types of statutes."

Couch on Insurance 2d, § 45:721, p. 352, 361 says, in discussing the financial responsibility statutes:

"The basic problem with this type of statute is that the motorist is entitled to one 'free' accident. These laws do not apply retroactively to the first accident, thereby allowing the motorist to permit his operator's license or vehicle registration to be revoked and that would be the end of state imposed penalties for his failure to satisfy a judgment rendered against him, at least to the extent of the minimum amount set forth in the statute. Such an act provides little consolation to the victim of the first accident whose only recourse is to seek to satisfy the judgment entered against the irresponsible motorist, attempt to recover from his own uninsured motorist carrier (if in fact the victim is insured), or seek recovery from a state indemnity fund or assigned claims facility. Financial responsibility laws are the oldest attempt to legislatively respond to the problems of assuring compensation to the traffic accident victim. Clearly, they are not totally effective in achieving such a goal which is one reason for the increase in the number of states with compulsory liability insurance laws."

In *Wyoming Farm Bureau Mutual Insurance Company v. May,* Wyo., 434 P.2d 507, 512 (1967), in interpreting the financial responsibility law, we said:

" * * * [W]e conclude that proof of financial responsibility under the Act is required only in cases where the Superintendent of motor vehicle division has received record of conviction or forfeiture of bail of a person and has suspended or revoked that person's driver's license or where the owner of the vehicle is involved in an accident or where a person involved in an accident is using a motor vehicle of another person with permission of the owner." (Emphasis omitted.)

In interpreting Wyoming's financial responsibility law, this court has held that a motor vehicle owner (absent negligence on his part) who was immune from suit, need not respond to the directives of the act where the insured's daughter was involved in an accident. This holding was bottomed on the theory that—since the statute pro-

vided the owner need only present evidence of financial responsibility in those cases where he or she was liable at law, and, since Wyoming did not recognize the family-purpose doctrine—there was no need for the owner to surrender his or her registrations for those vehicles which were not involved in the accident. *Wyoming Department of Revenue v. Wilson,* Wyo., 400 P.2d 144, reh. denied 401 P.2d 960 (1965).

We have also held that it is within the province of the superintendent's discretion to ascertain the degree of culpability when fixing the sufficiency of the security which the act requires be deposited. *Thornley v. Wyoming Highway Department,* supra, 478 P.2d 600. By the same token, if the superintendent were to decide that there is no culpability, then there would be no demand for security deposit. In these instances, the superintendent is called upon to make discretionary judgments that there is to be no "loss from the liability imposed by law."

The interaction between a compulsory insurance act and a financial responsibility law was considered in *Transamerica Insurance Co. v. Royle,* Mont., 656 P.2d 820 (1983). There the issue was whether or not the compulsory insurance statute prohibits a family-exclusion clause. The pertinent language of the statute in question was as follows:

" 'Every owner of a motor vehicle ... shall continuously provide insurance *against loss resulting from liability imposed by law* for bodily injury or death or damage to property *suffered by any person ....* ' (Emphasis added.)" 656 P.2d at 821.

The insurance company argued

" * * * simply that the statute does not void the family exclusion clause because the statute only requires coverage for 'liability imposed by law.' In other words, if Montana recognizes parental immunity from suit by their children then Mr. and Mrs. Haines cannot be liable; and since there would not be 'liability imposed by law' the family exclusion clause would be valid." 656 P.2d at 822.

One of the questions for the Montana court was whether policy containing the family exclusion, and thus not certifiable under the statute, was or was not valid.

The Montana Supreme Court said:

" * * * [I]n 1979 the legislature mandated liability insurance. Every vehicle owner is now required to certify to the county treasurer that he possesses an automobile liability insurance policy. It appears from the briefs that 'in the instant case, the subject insurance Policy was "certified" by the owner of the vehicle * * * as proof of having complied with the law requiring insurance for bodily injury suffered by "any person." ' Thus, the policy was certified under the law requiring mandatory liability insurance but was not certified under the Motor Vehicle Safety Responsibility Act." 656 P.2d at 822.

The court went on to hold that the two parts of the act—i.e., the financial-responsibility provision and the compulsory-insurance provision—were separate, citing 7 Am Jur 2d, Automobile Insurance § 20, supra, and that therefore

"[t]he effect of the language of the mandatory insurance law requires the liability policy to protect against bodily injury and property damage to 'any person.' *In so providing, the legislature has expressly outlawed the 'household exclusion.'*" (Emphasis added.) 656 P.2d at 823.

In those circumstances where insurance is required to comply with a statute and the insurance policy contains exclusions which are contrary to statutory mandates, it is held that such exclusion clauses are void as against public policy and the insurance policy will be enforced as though the exclusions were not contained therein. *Reeves v. Miller,* Fla. 5th DCA, 418 So.2d 1050 (1982).

In *Reeves v. Miller,* supra, the Florida Court of Appeals put the rule this way: "Insurance provided to comply with a statutory requirement must comply with the statute. A policy purporting to provide the required statutory coverage but containing exclusions not contemplated by the statute does not provide the re-

quired coverage. Since the unauthorized exclusions are contrary to public policy as established by the statute, they are deemed inapplicable and disregarded and the policy is enforced as if it were in express compliance with the statutory requirements. See, e.g., *Mullis v. State Farm Mut. Auto. Ins. Co.,* 252 So.2d 229 (Fla.1971); *State Farm Mut. Auto. Ins. Co. v. Chapman,* 415 So.2d 47 (Fla. 5th DCA 1982); *Andriakos v. Cavanaugh,* 350 So.2d 561 (Fla. 2d DCA 1977)." 418 So.2d 1050–1051.

Where the public policy is clearly identified in the statute, as it is in Wyoming's compulsory insurance statute, and the household exclusion is not specifically excepted, the rule is that the claimed exclusion will not supersede the public policy.

In *Estate of Neal v. Farmers Insurance Exchange,* 93 Nev. 348, 566 P.2d 81 (1977), the facts show that the insured was covered with a Farmers Insurance Exchange automobile liability policy which contained a household-exclusion clause. The insured and his wife were killed and three children injured in a one-car accident in which the insured was driving. In a declaratory-judgment suit brought by Farmers to test its liability, it was conceded that the children were members of the insured's household. The district court held that, because of Nevada's compulsory-insurance law, the exclusion clause was void up to the statutory limitations. In upholding the trial court, the Supreme Court of Nevada said:

"Respondent's contention that Nevada's Motor Vehicle Insurance Act, NRS Ch. 698, does not render the household exclusion clause void is equally without merit. That Act requires an owner of a motor vehicle registered in the state to provide, by a contract of insurance or by qualifying as a self-insurer, security for the payment of tort liabilities arising from the maintenance or use of the motor vehicle. * * *

\* \* \* \* \* \*

" * * * Therefore, respondent's household exclusion clause, insofar as it attempts to eliminate the minimum security, contra-

venes the statutory mandates of NRS Ch. 698 and is void. *State Farm Mut. Auto. Ins. v. Hinkel,* 87 Nev. 478, 488 P.2d 1151 (1971)." 566 P.2d at 83.

In *Bishop v. Allstate Insurance Company,* Ky., 623 S.W.2d 865 (1981), Ruth Ann Bishop was injured in a single-vehicle automobile accident in which she was the sole passenger and her husband, John Franklin, was the driver. He carried an Allstate automobile insurance policy with a household exclusionary clause. Ruth Ann was a member of John Franklin's household. Kentucky had a compulsory insurance act.

Allstate contended that the household exclusionary clause relieved the company from tort liability. Ruth Ann Bishop contended that the exclusionary clause was in violation of the public policy of the state and thus the clause was void. In overruling the trial court, the Kentucky Supreme Court held that, through the enactment of the compulsory insurance act the legislature had declared the public policy to be that all motor vehicle owners in the state would be insured up to the minimum required by law. While acknowledging that it had upheld the exclusionary clauses prior to the enactment of the compulsory insurance law, the court said that, in adopting the compulsory insurance law, the legislature did not see fit to exclude the members of the insured's household from minimum coverage and therefore it was the legislature's intent that such persons and categories of individuals would be covered by insurance. The court said:

"An exclusionary clause in an insurance contract which reduces below minimum or eliminates [the minimum liability coverage of $10,000, $20,000 and $5,000] effectively renders a driver uninsured to the extent of the reduction or elimination. Because the stated purpose of the MVRA [compulsory insurance act] is to assure that a driver be insured to a minimum level, such an exclusion provision contravenes the purpose and policy of the compulsory insurance act. *State Farm Mutual Automobile Insurance Co. v. Si-*

*vey,* 404 Mich. 51, 272 N.W.2d 555 (1978)." 623 S.W.2d at 866.

The court went on to say:

"Consequently, family or household exclusionary clauses in insurance contracts that dilute or eliminate the minimum requirements of * * * tort liability coverage are void and unenforceable. *Allstate Insurance Co. v. De Frain,* 81 Mich.App. 503, 265 N.W.2d 392 (1978)." 623 S.W.2d at 866.

The court held:

"The cases which uphold the validity of family exclusion provisions are overruled to the extent that they dilute or eliminate the minimum coverage requirements of the MVRA [the compulsory insurance act]." 623 S.W.2d at 866–867.

In *Allstate Insurance Company v. De Frain,* 81 Mich.App. 503, 265 N.W.2d 392 (1978), where the husband had injured the wife in a motor vehicle accident, the company, relying upon an exclusionary clause, brought a declaratory-judgment action to determine whether it had an obligation to defend the husband in a suit brought by his wife. Michigan had a compulsory minimum-insurance act. In holding that the exclusionary clause was void as against public policy in the face of the compulsory motorist insurance act, the court said:

"Exclusions that cause a certified policy to deviate from statutory requirements are barred. [Citing cases.]" 265 N.W.2d at 393.

In *Lilje v. Allstate Insurance Company,* 393 Mich. 259, 224 N.W.2d 279 (1974), the court held that family-exclusion clauses are void in those instances where a motor vehicle is registered as an insured vehicle on the strength of the certificate of insurance which represents that the liability policy covers the vehicle in compliance with the compulsory insurance law.

In *Citizens Mutual Insurance Company v. Central National Insurance Company of Omaha,* 65 Mich.App. 349, 237 N.W.2d 322, 324–325 (1975), the Court of Appeals of Michigan, citing with approval its prior opinion in *Allstate Insurance Company v.*

*Motor State Insurance Co.,* 33 Mich.App. 469, 190 N.W.2d 352 (1971), said:

"*Allstate,* supra, involved the validity of an exclusionary clause in an automobile liability policy issued to Judith or Norman L. Bangs which attempted to exclude Norman L. Bangs from liability protection as an operator of the motor vehicle. The court referred to the statutory scheme and concluded:

" 'It is clear that the Legislature intended that no automobile should be registered in this State unless certain requirements have been met. To obtain registration for an automobile one must either have a policy of liability insurance or pay the uninsured motor vehicle fee. The requirements of the liability policy are those set forth in * * M.C.L.A. §§ 257.501–257.532 [now MCLA § 257.3009] * * *

" 'The public policy as delineated by the Legislature requires that the liability policy must be written in conformity with the statutory requirements. The statute does not provide for the type of exclusionary clauses as were contained in the instant policy. Thus, the exclusionary clauses are contrary to the public policy of this State and are therefore invalid and of no effect.' *Allstate,* supra, at 473, 474, 190 N.W.2d at 354.

"In accord with this view are *Robinson v. Mendell,* 45 Mich.App. 368, 206 N.W.2d 537 (1973); *Cadillac Mutual Insurance Co. v. Bell,* 50 Mich.App. 144, 212 N.W.2d 816 (1973); *Celina Mutual Insurance Co. v. Preferred Risk Mutual Insurance Co.,* 51 Mich.App. 99, 214 N.W.2d 704 (1974), overruled sub nom *Lilje v. Allstate Insurance Co.,* 393 Mich. 259, 224 N.W.2d 279 (1974); *State Automobile Mutual Insurance Co. v. Babcock,* 54 Mich.App. 194, 220 N.W.2d 717 (1974)."

See also *State Farm Mutual Automobile Insurance Company v. Sivey,* 404 Mich. 51, 272 N.W.2d 555 (1978).

In *State Farm Mutual Automobile Insurance Company v. Smith,* 167 Cal.Rptr. 410, 109 Cal.App.3d 575 (1980), where the innocent third-party wife suffered bodily injury

proximately caused by the negligence of the insured husband's permittee driver and the insurance company denied liability under a household-exclusion clause, the court held:

"The Financial Responsibility Law requires that all owners and drivers of motor vehicles be insured. The public policy of California is not to permit insurers the right to promiscuously choose those groups whom they will insure and those whom they will not, thereby eradicating at their pleasure the public policy requiring all drivers and owners to be insured. (See, *Midcentury Insur. Co. v. Hernandez* (1969) 275 Cal.App.2d 839, 80 Cal.Rptr. 448; *Jurd v. Pacific Indem. Co.* (1962) 57 Cal.2d 699, 21 Cal.Rptr. 793, 371 P.2d 569; *Interinsur. Exch. etc. So. Cal. v. Ohio Cas. Insur.* (1962) 58 Cal.2d 142, 23 Cal.Rptr. 592, 373 P.2d 640.) The philosophy enunciated by *Wildman* [*v. Government Employees' Insur. Co.,* 48 Cal.2d 31, 307 P.2d 359 (1957)], still lives. The innocent third party suffering bodily injury proximately caused by the negligence of the permittee driver of an insured, is still within the penumbra of California's financial responsibility protective umbrella." 167 Cal.Rptr. at 417.

In summary, we hold that the prevailing and overriding public policy of the state of Wyoming—as contained in the financial responsibility law (motor vehicle safety responsibility act, § 31–9–101, et seq., W.S. 1977), the compulsory insurance statute (§ 31–4–120, W.S.1977, 1983 Cum.Supp.) and the uninsured motorist act (§ 31–10–101, et seq., W.S.1977)—is to be found in the words of the compulsory insurance statute as follows:

"No owner of a motor vehicle required to be licensed shall operate or permit the operation of the vehicle without having in full force and effect an automobile liability policy as provided by W.S. 31–9–403 * * *." § 31–4–120, W.S.1977, 1983 Cum.Supp.

Although some exceptions are mentioned in the applicable statutes, these statutes contain no exception for family members of insured owner-operators of motor vehicles.

A statute which expressly mentions one thing implies the exclusion of other similar things. *Town of Pine Bluffs v. State Board of Equalization,* supra, 79 Wyo. 262, 333 P.2d 700.

An automobile liability insurance policy containing a household exclusionary clause, offered for certification under the compulsory insurance statute, is void to the extent of the minimum coverage contemplated by law, since the exclusion is in violation of the public policy of the state of Wyoming.

Affirmed.

ROONEY, Chief Justice, specially concurring, with whom BROWN, Justice, joins.

I agree with the result reached in the majority opinion, i.e., the affirmance of the district court, but I do not agree with much of that said in the majority opinion. Its sweep is too broad, as is the sweep of the exclusionary rule used by the petitioners in their insurance policies.

The general rule relative to exclusionary clauses is set forth in Annotation: Validity, construction, and application of provision of automobile liability policy excluding from coverage injury or death of member of family or household of insured, 46 A.L.R.3d 1024, § 2, p. 1027 (1972):

"*In the absence of a statutory prohibition* to the contrary, provisions of automobile liability insurance policies excluding from coverage members of the insured's family or household have usually been held valid and effective to protect the insurer against claims for injuries to persons who fall within the specified classes. One court stated in this regard that insurance companies have the same right as individuals to limit their liability and to impose upon their obligations whatever conditions they please, *not inconsistent with public policy* * * *." (Emphasis added.)

We have accepted the general rule recognized by the Insurance Department's hearing officer in his conclusions of law and recognized in the majority opinion to the effect that the freedom on the part of insurance companies to include any desired provision in insurance contracts is limited to

that which is *not prohibited by statute or public policy. McKinney v. McKinney,* 59 Wyo. 204, 135 P.2d 940 (1943); *Ball v. Ball,* 73 Wyo. 29, 269 P.2d 302 (1954); *Oldman v. Bartshe,* Wyo., 480 P.2d 99 (1971); and *Vossler v. Peterson,* Wyo., 480 P.2d 393 (1971).

Remembering that inter-spousal and parent-child immunity originated in common law and that the insurer steps into the position of the insured in determining the existence of fault or liability on the part of the insured, wherefore the conflict as to fault or liability is primarily between the insured and the one claiming injury [1], that said by this court with reference to statutes and the public policy behind inter-spousal and parent-child immunity is pertinent.

" * * * 'It is not to be presumed that the legislature intended to abrogate or modify a rule of the common law .by the enactment of a statute upon the same subject; it is rather to be presumed that no change in the common law was intended unless the language employed clearly indicates such an intention. * * * The rules of common law are not to be changed by doubtful implication, nor overturned except by clear and unambiguous language.' " *McKinney v. McKinney,* supra, 135 P.2d at 942, quoting from 25 R.C.L. 1054, § 280.

" ' * * * Conceding it to be within the power of the legislature to make this alteration in the law, if it saw fit to do so, nevertheless such radical and far-reaching changes should only be wrought by language so clear and plain as to be unmistakable evidence of the legislative intention. Had it been the legislative purpose * * * to permit the wife to bring * * * actions against him [her husband] also for injuries to person or property as though they were strangers, thus emphasizing and publishing differences which otherwise might not be serious, it would have been easy to have expressed that intent in terms of irresistible clearness.' " Id. 135 P.2d at 944, quoting from *Thompson v. Thompson,* 218 U.S. 611, 31 S.Ct. 111, 54 L.Ed. 1180 (1910).

" 'It must be presumed that the legislators knew the policy of the common law, as established by centuries of judicial decisions. Had it been the intention of the Legislature · to permit husband and wife to sue each other for injuries to the person or property caused by the other, it surely would have so declared by express and clear legislative enactment. * * * If such is to become the policy of the law, if such a radical change, so vitally affecting the legal status of husband and wife, is to be made, it should be made by clear and express legislation and not by judicial construction.' " Id. 135 P.2d at 950, quoting from *Finn v. Finn,* 19 Ohio App. 302 (1924).

" 'Unemancipated minor child has no right of action against parent or person standing in loco parentis for tort of such parent or person, unless right of action is authorized by statute.' " *Ball v. Ball,* supra, 269 P.2d at 305, quoting from *Cook v. Cook,* 232 Mo.App. 994, 124 S.W.2d 675 (1939).

" * * * [I]n substance, * * * the judiciary should be reluctant to encourage actions as maintainable between children and their parents unless sanctioned by the statute law or where they disclose so clear an invasion of the rights of the child as tending to bring discord into the family and to disorganize its proper government. * * * " Id. 269 P.2d at 314, and also *Oldman v. Bartshe,* supra, 480 P.2d at 101.

The legislature has not enacted a statute changing the common law and long time judicially recognized public policy of the state to the effect that inter-spousal and parent-child immunity for negligence exists in Wyoming. As will be noted infra, the exclusionary clauses in appellants' policies go well beyond inter-spousal and parent-child immunity and are improper for that reason.

" ' * * * the fact [of] * * * liability insurance created no liability or cause of action where none otherwise existed. * * * ' "

---

1. We said in *Ball v. Ball,* supra, 269 P.2d at 308, quoting from *Brumfield v. Brumfield,* 194 Va. 577, 74 S.E.2d 170 (1953):

The established public policy in this respect was not changed by the enactment of § 31–4–120(a), W.S.1977, Cum.Supp.1983. It provides:

"(a) No owner of a motor vehicle required to be licensed shall operate or permit the operation of the vehicle without having in full force and effect an automobile liability policy as provided by W.S. 31–9–403 or bond in amounts provided by W.S. 31–9–102(a)(x). * * *"

Section 31–9–403 referred to therein refers to a current liability insurance policy on a specified motor vehicle or motor vehicles with an insurance carrier authorized to do business in this state. Section 31–9–102(a)(x) requires the policy to be at least in the amount of $10,000 for bodily injury or death of one person in any one accident, $20,000 for such of two or more persons in any one accident, and $5,000 for injury to or destruction of property.

Section 31–4–120(a), supra, does not prohibit an exclusionary clause. It does not address the question. Certainly, there is no *express* prohibition or *clear language* setting forth such. Nor does consideration of §§ 31–9–101, et seq. and 31–10–101, et seq., W.S.1977, the Motor Vehicle Safety-Responsibility Act and the Uninsured Motorist Act, change the result. As pointed out in the majority opinion, they concern separate matters for separate purposes. (It is difficult, however, to understand the necessity for the Motor Vehicle Safety-Responsibility Act in light of § 31–4–120(a) requiring compulsory insurance). The majority opinion seems to see some pertinency in the requirement of the Motor Vehicle Safety-Responsibility Act for the insurance policy prescribed therein to protect the insured *"from the liability imposed by law* for damages arising out of the" ownership, use or maintenance of the vehicle. The "liability imposed by law" is that resulting from negligence or intentional invasion of another's rights. It says nothing about revoking the inter-spousal or parent-child immunity—i.e., a status which defines the perimeters of "liability imposed by law" and which status is one that is other than that in which liability is imposed by law.

Likewise, the majority opinion finds some association between (1) the requirement in § 31–4–120(a) that *"no owner * * * shall* operate or permit operation of the vehicle" not covered by a liability policy, and (2) the identity of those to whom he may be liable. There is no connection. The liability policy is expected to protect the owner from economic loss in cases in which he is liable under the law. The fact that he must have such a policy does not define the group to whom he is liable, i.e., whether or not it includes those with inter-spousal or parent-child immunity.

The majority opinion recognizes the purpose of § 31–4–120(a) to be for the protection of the "general public." But established public policy does not include spouses, parents, or their children as part of the general public. It sets them off from general public for this purpose.

Because the insurance policy required by the Motor Vehicle Safety-Responsibility Act need not insure liability under any workmen's compensation law or on account of injury to an employee (§ 31–9–405(e), W.S. 1977) but does not refer to inter-spousal or parent-child immunity, the majority opinion concludes that the legislature intended to abrogate this long-standing immunity. As noted, we have said that such abrogation must be express; but beyond that, the exceptions contained in § 31–9–405(e) recognize the existence of a relationship for exclusion which is not nearly as close or important as the inter-spousal and parent-child relationship. And there are other exceptions under the act from the requirement as to security, such as a person who was legally parked at the time of the damage and an owner whose vehicle was being operated by someone without his permission. The point is that the two acts are separate and with different purposes—as recognized by the majority opinion, and, secondly, those exceptions listed in § 31–9–405(e) are not similar to the inter-spousal and parent-child immunity. Expressio unius est exclusio alterius applies to similar things as noted in *Citizens Mutual Insur-*

ance *Company v. Central National Insurance Company of Omaha,* 65 Mich.App. 349, 237 N.W.2d 322, 325 (1975), (one of the two cases referred to in the majority opinion in this respect). The rule cannot be applied, for example, to exclude crutches when the words of exclusion are "dogs, cats, chickens and horses."

The rationale for inter-spousal and parent-child immunity is that which common sense dictates:

" ' * * * The procedural difficulties, the dangers of disrupting the secrecy and serenity of marital relations, the avenue for fraud, the startling innovation in permitting such controversies, and the lack of clear legislative indorsement have all been assigned as ample reasons for the refusal of the courts to sanction, by supplying statutory interpretation, a new form of litigation manifestly requiring unequivocal legislation for its existence. * * * ' " *McKinney v. McKinney,* supra, 135 P.2d at 946, quoting from *Emerson v. Western Seed & Irrigation Co.,* 116 Neb. 180, 216 N.W. 297, 56 A.L.R. 327 (1927).

" ' * * * [T]he specific purpose was to safeguard the company against the natural and inevitable partiality of the assured to an injured person if he should happen to be a member of the same family circle.' " Id. 135 P.2d at 948, quoting from *State Farm Mutual Automobile Insurance Company v. James,* 80 F.2d 802 (1936).

" ' * * * Without actual dishonesty, the disposition to favor those close to one reflects itself in opinions and judgments, and one insured is more likely to concede by admission or nonresistance blame for hurting a member of his household than for doing harms to others.' " Id. 135 P.2d at 948, quoting from *Cartier v. Cartier,* 84 N.H. 526, 153 A. 6 (1931).

" ' * * * [T]he rule * * * should be adhered to until such time as the Legislature shall deem it wise and prudent to open up a field for marring or disturbing the tranquillity of family relations * * *. If that source of litigation is to be opened up at all, it should come about by legisla-

tion. * * * ' " Id. 135 P.2d at 950, quoting from *Drake v. Drake,* 145 Minn. 388, 177 N.W. 624, 9 A.L.R. 1064 (1920).

" ' * * * The wide acceptance of this rule is chiefly due to the following reasons advanced in its behalf:

" '1. Preservation of family harmony.

" '2. Maintenance of disciplinary authority of the parent.

" '3. Prevention of collusion or fraud.

" '4. Preservation of equal distribution of the family exchequer.

" '5. Avoidance of useless litigations, since the parent may inherit any money which the child recovers in such an action.

" '6. Prevention of stale claims by minors upon reaching majority.' " *Ball v. Ball,* supra, 269 P.2d at 305, quoting from Boston University Law Review, Vol. 23, pp. 259, 260.

*McKinney v. McKinney,* supra, and *Ball v. Ball,* supra, quote from many other holdings which word the rationale in several ways. Generally, they note the purpose of the rule is to promote domestic harmony, protect against over friendly lawsuits, engender peace of society, allow security in the home, uphold the sacredness of marriage, etc. The deterioration of the family unit with accompanying loss of discipline and morality is the cause of many of the social problems of today. Attention to such matters, ranging from the rise in the rate of crimes to malfunction of education, is most often directed at the effect rather than the cause. In most instances the cause lies in the aforesaid breakdown of the family unit, lack of discipline and low moral standards. Changing the public policy relative to inter-spousal and parent-child immunity would only aggravate an already bad situation.

" ' * * * Family deterioration registers quickly in political life, appearing in loss of integrity in both citizenship and governmental activities.' " (Emphasis omitted.) *Ball v. Ball,* supra, 269 P.2d at 314.

Finally, the cases quoted in the majority opinion for the proposition that § 31–4–120(a) changes the Wyoming public policy recognizing inter-spousal and parent-child

immunity can be easily distinguished. The quotations are from Montana (1), Nevada (1), Florida (1), Kentucky (1), Michigan (4), and California (1). There is no indication in any of these cases that inter-spousal and parent-child immunity has been judicially established in the respective states, as it has in Wyoming. But there are other distinguishing factors.

The quotation from the Montana case of *Transamerica Insurance Co. v. Royle,* Mont., 656 P.2d 820 (1983), which follows the wording of the Montana statute, spells out the cardinal difference between the Wyoming and Montana law. Section 61–6–301(1), Mont.Code Ann. (1983), provides in part:

"(1) Every owner of a motor vehicle * * * shall continuously provide insurance against loss resulting from liability imposed by law for bodily injury or death or damage to property *suffered by any person* * * *." (Emphasis added.)

Obviously, the legislative intent was positive and express in establishing liability toward "any person." Not so in Wyoming. Neither § 31–4–120(a) nor the statutes referred to therein reflect that the liability is to be to "any person," and the intent to do so is not even implied, let alone expressed, in Wyoming law. Ergo, the public policy set forth in *McKinney v. McKinney,* supra, and *Ball v. Ball,* supra, remains Wyoming law.

The quotation in the majority opinion from the Nevada case, *Estate of Neal v. Farmers Insurance Exchange,* 93 Nev. 348, 566 P.2d 81 (1977), is likewise misplaced. The Nevada court was interpreting a proof of financial responsibility enactment. The court noted that the act "specifically prohibits an insurer from excluding this required minimum security for tort liability," 566 P.2d at 83. The court then held:

" * * * In light of this provision and because the household exclusion would otherwise be valid, the insurance policy here need provide nothing more than the minimum security required by the Act, and, *beyond this minimum security, the exclusionary clause is viable.* * * *" Id. 566 P.2d at 83.

Again, a situation other than under Wyoming law.

The Florida case of *Reeves v. Miller,* Fla., 418 So.2d 1050 (1982), involved a clause in the insurance contract which excluded "any obligation for which the United States may be liable under the federal tort claims act." The question of inter-spousal or parent-child immunity was not before the court. In any event, the Florida enactment specifically provides:

"(1) Required benefits.—Every insurance policy * * * shall provide * * * for payment of all reasonable expenses incurred for necessary medical, surgical [etc.] * * * to the named insured, relatives residing in the same household, persons operating the insured motor vehicle, passengers in such motor vehicle, and other persons struck by such motor vehicle * * * all as specifically provided in subsections (2) and (4)(d), * * *.

\* \* \* \* \* \*

"(2) Authorized exclusions.—Any insurer may exclude benefits:

"(a) For injury sustained by the named insured and relatives residing in the same household while occupying another motor vehicle owned by the named insured and not insured under the policy, * * *.

"(4) * * *

\* \* \* \* \* \*

"(d) The insurer of the owner of a motor vehicle shall pay personal injury protection benefits for:

\* \* \* \* \* \*

"3. Accidental bodily injury sustained by a relative of the owner residing in the same household, under the circumstances described in subparagraph 1. or subparagraph 2., provided the relative at the time of the accident is domiciled in the owner's household and is not himself the owner of a motor vehicle with respect to which security is required * * *." Fla.Stat. Ann., § 627.736 (West).

The public policy of Florida, as stated in this statute, is to recognize the propriety of including exclusionary clauses (much broad-

er than that judicially recognized in Wyoming) in insurance contracts. The quotation from *Reeves v. Miller,* supra, in the majority opinion has no value as a precedent to Wyoming law.

Kentucky does not have a compulsory insurance law similar to § 31–4–120(a). The Kentucky law is a "no fault" insurance law, regularly referred to as a "Motor Vehicle Accident Reparations Act" or a "Motor Vehicle Reparations Act." Among its purposes are:

"(1) To require owners, registrants and operators of motor vehicles in the Commonwealth to procure insurance covering basic reparation benefits and legal liability arising out of ownership, operation or use of such motor vehicles;

"(2) To provide prompt payment to victims of motor vehicle accidents *without regard to whose negligence caused the accident* in order to eliminate the inequities which fault-determination has created;

\* \* \* \* \* \*

"(5) *To reduce the need to resort to bargaining and litigation* \* \* \* ;

"(6) *To help guarantee the continued availability of motor vehicle insurance at reasonable prices* \* \* \*." (Emphasis added.) Ky.Rev.Stat., § 304.39–010 (1981 Replacement).

Ky.Rev.Stat., § 304.39–030 provides that "every person" suffering injury from motor vehicle accidents in the state "has a right to basic reparation benefits" unless rejected; and, if the accident occurred in another state, the basic reparation insureds and "the driver and other occupants" of the motor vehicle have such right. Ky.Rev.Stat., § 304.39–040 provides that "basic reparation benefits shall be paid without regard to fault" and that such "obligation exists without regard to immunity from liability or suit which might otherwise be applicable." Ky.Rev.Stat., § 304.39–060 "abolishes" tort liability for damages arising out of motor vehicle accidents in the state to the extent provided by the basic reparation benefits, but allows rejection of such benefits by "any person," who then retains tort rights

and liabilities. Subsection (2)(c) then provides that:

"Tort liability is not limited for injury to a person who is not an owner, operator, maintainer or user of a motor vehicle \* \* \*."

When read in context with the "no fault" enactment, the quotations in the majority opinion from *Bishop v. Allstate Insurance Company,* Ky., 623 S.W.2d 865 (1981), referring to inapplicability of an exclusion clause to "dilute or eliminate the minimum coverage requirements," are hardly of value in interpretation of the Wyoming statutes and public policy.

The Michigan statute is similar to the Montana statute, supra, in that it provides that the motor vehicle liability policy insures against loss suffered "by any person," and that:

"(2) When authorized by the insured, \* \* \* *coverage may be excluded when a vehicle is operated by a named person.* \* \* \* " (Emphasis added.) Mich.Stat.Ann., § 24.13009 [M.C.L.A. § 500.3009].

As noted with reference to the Montana law, the Wyoming statute does not expressly establish liability toward "any person." Michigan law creates an only exception by authorizing an exclusion of a person designated in the policy for exclusion. The quotations in the majority opinion from *Allstate Insurance Company v. DeFrain,* 81 Mich.App. 503, 265 N.W.2d 392 (1978); *Lilje v. Allstate Insurance Company,* 393 Mich. 259, 224 N.W.2d 279 (1974), citing *Allstate Insurance Company v. Motor State Insurance Co.,* 33 Mich.App. 469, 190 N.W.2d 352 (1971); and *Citizens Mutual Insurance Company v. Central National Insurance Company of Omaha,* supra, interpret a statute requiring insurance coverage for "every person." As noted, the Wyoming statute does not do so.

The California law interpreted in *State Farm Mutual Automobile Insurance Company v. Smith,* 109 Cal.App.3d 575, 167 Cal. Rptr. 410 (1980) is somewhat similar to the Michigan statute which authorizes an exclusion of insurance operation in favor of a

"named person." Cal.Ins.Code, § 11580.1(c) (1983 P.P.) (West), provides in part:

> " * * * [T]he insurance afforded by any such policy of automobile liability insurance * * * may, by appropriate policy provision, be made inapplicable to any or all of the following:
>
> \*      \*      \*      \*      \*      \*
>
> "(5) Liability for bodily injury to an insured * * *."

The quotation in the majority opinion from *State Farm Mutual Automobile Insurance v. Smith,* supra, is of questionable value in reflecting California law. It comes from the Court of Appeal, Second District. In the same year, the Court of Appeal, Third District considered a clause which excluded

> " 'person[s] who [are] related by blood, marriage, or adoption to an insured against whom claim is made if such person resides in the same household as such insured.' " See *Phelps v. Allstate Insurance Company,* 106 Cal.App.3d 752, 165 Cal.Rptr. 263, 266 (1980).

The court found the clause to be overbroad and therefore void. But it noted that this resulted only because the excluded class was not the same as the named insured. It said that:

> " * * * The overbreadth can be cured only by rewriting (reforming) either the exclusion clause or the insured clauses, or both. * * * " Id. 165 Cal.Rptr. at 266.

Two years later in *20th Century Insurance Company v. Stuart,* 129 Cal.App.3d 370, 181 Cal.Rptr. 61 (1982), the Court of Appeal, Second District, was presented with a claim by the mother of a driver of a motor vehicle insured under a policy in which the definition of the insured included the named insured, and "his relatives." The exclusionary clause included the "insured or any member of the family of the insured residing in the same household as the insured." The court acknowledged that the word "family" was not defined in the policy, but that the mother was a member of the relatives in residence in any event and that the exclusion clause was not void as against public policy.

The public policy of Wyoming as set forth in *McKinney v. McKinney,* supra, and *Ball v. Ball,* supra, has not been changed by statute or otherwise. Inter-spousal and parent-child immunity exists in Wyoming.

However, the exclusionary clause contained in the policy involved in this case goes far beyond inter-spousal and parent-child immunity. There is no statutory provision or public policy authorizing additional exclusions, and the intent of the legislature to require liability insurance coverage in all instances not excluded by existing public policy is adequately expressed in § 31–4–120(a). For this reason, I specially concur in the majority opinion.