Pamela Jo THORNLEY and Erwin Robert Thornley, Appellants (Petitioners below),

v.

WYOMING HIGHWAY DEPARTMENT, MOTOR VEHICLE DIVISION, Wyoming Department of Revenue, E. C. Shepard, Superintendent, Wyoming Motor Vehicle Safety-Responsibility Act, and the State of Wyoming, Appellees (Respondents below).

No. 3844.

Supreme Court of Wyoming.

Jan. 5, 1971.

Franklin D. Bayless, Laramie County Legal Services, Cheyenne, for appellants.

Robert J. Oberst, Sp. Asst. Atty. Gen., Cheyenne, for appellees.

Before McINTYRE, C. J., and PARKER, McEWAN and GRAY, JJ.

Chief Justice McINTYRE delivered the opinion of the court.

The appellants in this case are questioning the constitutionality of the Wyoming Motor Vehicle Safety-Responsibility Act. They petitioned the district court for a review of the superintendent's suspension of the owner's registration and the driver's license because of failure to comply with the provisions of the Act.

Pamela Jo Thornley, while driving a motor vehicle registered in the name of her husband, Erwin Robert Thornley, was involved in an accident with a vehicle owned and driven by Dwight A. Nordin.

Pursuant to the provisions of §§ 31–277 to 31–315, W.S.1957, C. 1967, the superintendent notified Mrs. Thornley as operator and Mr. Thornley as owner that they were required to furnish proof of financial responsibility by:

(a) A deposit of security in the sum of $10,900;

(b) A certificate of insurance; or

(c) A release from the other party involved.

The notice stated that, in the event the required proof of financial responsibility was not furnished by June 25, 1969, Mr. Thornley's registration and license plates would be suspended and Mrs. Thornley's driver's license would be suspended.

The Thornleys were uninsured and were unable to show financial responsibility as required. Mrs. Thornley therefore surrendered her driver's license to the superintendent. The Thornleys then brought their action in the district court seeking to restrain the superintendent from withholding the driver's license of Mrs. Thornley and the registration and license plates of Mr. Thornley. The court was also asked to reduce the amount of the security deposit, which had been set at $10,900.

The district court ordered the registration and license plates of Mr. Thornley to be reinstated. It also reduced the security deposit requirement to $900. It was ordered that suspension of the driver's license of Mrs. Thornley would remain in effect. The Thornleys are appealing from that part of the judgment which continued suspension of Mrs. Thornley's driver's license.

### Constitutionality

In questioning the constitutionality of Wyoming's financial-responsibility act, appellants freely admit 25 of 50 states with financial responsibility laws have ruled on the question of constitutionality. Only one of them, counsel for appellants states, has found its law unconstitutional. People v. Nothaus, 147 Colo. 210, 363 P.2d 180, 183.

It is counsel's claim that, in all this host of decisions, none of the courts have directly or realistically addressed themselves to two questions which are presented to us: (1) Is the right of mobility a fundamental constitutional right? (2) Is a motor vehicle an essential means of exercising one's right to mobility?

In view of the fact that counsel for appellants has presented a thorough and indeed excellent brief to develop his premise that there is a constitutional right to mobility and the motor vehicle has become a

very important factor in the exercise of one's right to mobility, we cannot brush aside lightly his earnest plea for recognition of the important part motor vehicles play in American life today.

We are very much aware of the need for mobility and the role played by automobiles in that mobility. We are also aware of the decision of the United States Supreme Court in Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600, which is relied on by appellants.

No matter how important the right of mobility in an automobile is considered to be, however, there can be overriding rights and a need for reasonable regulations. Perhaps one of the most fundamental of our constitutional rights is the right to free speech, yet even this right has its limitations. Hence, the right of free speech does not entitle one to damage another with libel or slander.

Inasmuch as the attorney for appellants is critical of the decision of the United States Supreme Court in Reitz v. Mealey, 314 U.S. 33, 62 S.Ct. 24, 26–27, 86 L.Ed. 21, because he thinks the court did not review or consider the "constitutional worth of the right of mobility", we are trying to be careful about giving full constitutional worth to the right appellants seek to claim. In doing so, however, we cannot help being influenced by other decisions more than we are by counsel's fervent opinions and beliefs.

In the *Reitz* case, for example, we are persuaded more by the logic in the court's opinion than we are by counsel's criticism of it. Although the *Reitz* opinion was written some years ago, we find its language quite apropos to today's situation. We call attention particularly to this statement:

"The use of the public highways by motor vehicles, with its consequent dangers, renders the reasonableness and necessity of regulation apparent. The universal practice is to register ownership of automobiles and to license their drivers. Any appropriate means adopted by the states to insure competence and care on the part of its licensees and to protect others using the highway is consonant with due process. Some states require insurance or its equivalent as a condition of the issue of a license."

If it is appropriate and reasonable for a state to require insurance, or its equivalent, as a condition for issuance of a license, it follows that it is all the more appropriate and reasonable for a state to allow a licensee to be his own insurer, upon condition that he be prepared to show financial responsibility or the equivalent of insurance, when the need therefor arises by reason of an accident in connection with which a judgment might be obtained against the licensee. And, of course, it is appropriate and reasonable for a license and registration to be suspended if the licensee fails to show such financial responsibility after an accident in connection with which a judgment might be obtained against him.

It is pointed out in appellant's brief that the *Reitz* decision has been used "religiously" by all of the state courts which have upheld financial responsibility laws. If there could be any question about the current application of *Reitz*, all doubt would be removed by the fact that it is being universally followed in the state courts.

It has become an accepted rule in this jurisdiction that statutes will not be declared unconstitutional unless the unconstitutionality is clear. Brinegar v. Clark, Wyo., 371 P.2d 62, 64. In view of the almost unanimous decisions in state courts upholding financial responsibility laws like Wyoming's, and in the absence of any authority to contradict what was said in Reitz v. Mealey, 314 U.S. 33, 62 S.Ct. 24, 26–27, 86 L.Ed. 21, appellants cannot claim to have made a clear showing of unconstitutionality with respect to Wyoming's motor vehicle safety-responsibility act. Indeed, it was specifically held in the *Reitz* case that financial responsibility acts of states are a valid exercise of the police powers of a state.

## Due Process

■ We need to ask, is there anything different from the statutes in other states which would make Wyoming's safety-responsibility act deficient in the matter of due process? Appellants suggest it sometimes is required that the administrator have a hearing to determine whether there was negligence on the part of a driver before his licenses are suspended. They suggest a lack of due process because the Wyoming law does not require a hearing before the superintendent.

The legislature has not seen fit to require a hearing before the superintendent. We do not deem such a provision in the act essential for due process in the proceedings.

Our administrative procedure act and our rules of civil procedure both contemplate administrative proceedings where there is a hearing and administrative proceedings where there is no hearing. If the legal rights, duties or privileges of a party are required by law to be determined by an agency after an opportunity for hearing, the proceeding is called a "contested case." If such hearing is not required, the proceeding is a non-contested case. See § 9–276.19(b) (2), W.S.1957, 1969 Cum. Supp.; and Rule 72.1(b), W.R.C.P.

If any person is aggrieved by an order or act of the superintendent, with respect to the suspension of registrations or licenses, he is authorized by § 31–279, subd. B, W.S.1957, C. 1967, to file a petition in the district court for a review. The judge may even suspend the order or act of the superintendent pending final determination of the review. Also, § 31–286, W.S.1957, C. 1967, provides nothing in the safety-responsibility act shall be construed as preventing a person from relying for relief upon other processes provided by law.

Section 9–276.32(a), W.S.1957, 1969 Cum.Supp., a part of our administrative procedure act, makes it clear that any person aggrieved by the final decision of an agency in a contested case "or by other agency action" shall be entitled to judicial review in a district court. To the same effect is Rule 72.1(a), W.R.C.P. All of these provisions are in pari materia, and if § 31–279, subd. B is in any respect in conflict with the administrative procedure act or Rule 72.1, it is superseded insofar as such conflict is concerned.

Section 9.276.31(a), W.S.1957, 1969 Cum. Supp., has been mentioned. It has no application here because it deals with licensing matters where action is required by law to be preceded by notice and an opportunity for hearing (as in a contested case). Such a hearing is not required for the kind of action we are dealing with.

That is not to say, however, that the superintendent should not grant a hearing, in his discretion, if and when a need therefor has been shown. Section 31–293, W.S.1957, C. 1967, authorizes the superintendent to reduce the amount of security after six months if he then considers the amount excessive. This helps to verify that the superintendent has a judgment and discretion to exercise at all times.

■ The record in this case indicates the superintendent has been operating under a theory that § 31–289, subd. C, W.S. 1957, C. 1967, controls the amount of security he should require in any case where bodily injuries are claimed. If he does indeed have such a notion, he is wrong.

Part 3 of subdivision B of § 31–289 provides the section shall not apply when the operator or owner is covered by liability insurance or surety bond; and part 5 of subdivision B provides the deposit of security to be required may be in the form of a personal surety bond, with at least two individual sureties. Subdivision C of the section specifies no such insurance policy or surety bond shall be effective unless issued by an insurance company or "surety company."

Thus, when Subdivision C fixes the limits for "every such policy or bond", it is specifying the limits for acceptable surety company bonds, meaning bonds in the nature of insurance policies. It has no reference whatever to the amount of security

deposit to be required by the superintendent when there is no insurance policy or insurance in the form of a surety company bond. Section 31–289, subd. A makes it very clear the deposit of security shall be in a sum which shall be sufficient "in the judgment of the superintendent" to satisfy any judgment or judgments which may be recovered.

Section 31–293 confirms what we have just said by providing in so many words, the security required shall be in such form "and in such amount as the superintendent may require but in no case in excess of the limits specified" in § 31–289. Thus, the superintendent cannot escape his duty and responsibility to make a reasonable and proper determination of the amount of security that should be required to satisfy any judgment or judgments which might be recovered, and in so determining consider the matter of culpability.

Our determination is based upon an interpretation of the pertinent statutes, having in mind decisions in other jurisdictions dealing with motor vehicle safety-responsibility acts. The California court, in Orr v. Superior Court of City and County of San Francisco, 71 Cal.2d 220, 77 Cal.Rptr. 816, 820, 454 P.2d 712, 716, dealt with a statute which provided:

"* * * the driver shall deposit security in a sum which shall be sufficient in the judgment of the department to satisfy any final judgment or judgments in any amount * * * as may be recovered against such driver * * *. The department shall determine the amount of security deposit upon the basis of the reports or other evidence submitted to it * * *."

Its opinion indicated the Motor Vehicle Department should determine in each case whether there is a reasonable possibility that judgment may be recovered against the driver and so must consider culpability. Its delineation of views was cited with approval by the Utah court in Hague v. State, 23 Utah 2d 299, 462 P.2d 418, which, construing a statute similar to that of California, said, 462 P.2d at 420:

"* * * We do not wish to imply that the department has a duty to make judgments based upon conflicting evidence and to deal with such legal problems as contributory negligence, the application of the last clear chance doctrine and other intricate legal problems which can best be dealt with by the court. We believe the department should consider all of the facts presented to it by way of accident reports, the reports of investigating officers and other evidence submitted to it and where that evidence would indicate that there is a lack of culpability on the part of the driver or drivers, the department should not under those conditions suspend the operator's license or the automobile registration of the person or persons involved."

The relevant statute in Wyoming provides, "such operator or owner or both shall deposit security in a sum which shall be sufficient in the judgment of the superintendent to satisfy any judgment or judgments for damages resulting from such accident which may be recovered against such operator or owner." While this differs from the two statutes which we have mentioned in that it does not delineate the bases on which the determination is to be made, we hold that by intendment it requires consideration by the superintendent of the data presented and that the philosophy announced in the Hague and Orr cases controls here.

From the record in this case it would appear that the superintendent, apparently on the basis that he lacks authority, makes no effort to ascertain from the data presented to him whether there is a lack of culpability on the part of the drivers. As we have explained, he has not only this authority but a duty to determine the sufficiency of the security and the culpability or lack thereof of a person in-

volved in the accident.[1]  Any appeal from that determination is governed by the Wyoming Administrative Procedure Act (§§ 9–276.19—9–276.33, W.S.1957 (1969 Cum.Supp.)), § 9–276.32 providing that the procedure to be followed shall be in accordance with the rules of this court.  Under Rule 72.1(i), W.R.C.P., the judicial review of administrative action is confined to the record as the same may be supplemented under the provisions of the preceding subdivision, which allows additional material evidence in other than contested cases.  Since the superintendent made no determination as to culpability and this aspect was not broached by the district court, the judgment must be reversed and the cause remanded for further proceedings consistent with the views herein expressed.

Reversed and remanded.

1.  Although the promulgation of rules and regulations germane to the motor vehicle safety responsibility act does not directly affect the disposition of this controversy we think that the issuance of such rules and regulations were reasonably contemplated by the legislature under § 31– 279, W.S.1957, C. 1967, and would be consistent with the proper administration of justice in that field.  Incidentally, a provision in the notice of impending suspension of the right to appeal with the statutes and regulations applicable would be salutary.