**V–1 OIL COMPANY, Appellant (Complainant),**

v.

**CITY OF ROCK SPRINGS, Wyoming, a Municipal Corporation, Appellee (Respondent).**

**No. 90–195.**

Supreme Court of Wyoming.

Dec. 12, 1991.

F.M. Andrews, Jr. and Robert O. Anderson of Andrews and Anderson, P.C., Riverton, for appellant.

Vincent E. Crow, City Atty., Rock Springs, for appellee.

Before URBIGKIT, C.J., and THOMAS, CARDINE, MACY and GOLDEN, JJ.

URBIGKIT, Chief Justice.

This case involves an official written order of the Rock Springs, Wyoming Fire Chief requiring immediate (sixty days) removal by appellant, V–1 Oil Company (V–1 Oil), of a long-standing 18,000 gallon liquefied petroleum gas (LPG or propane) storage tank from its service station premises within the city limits of the City of Rock Springs, Wyoming (City), appellee. The storage tank had been anathematized by the Fire Chief for contended violation of the City's Uniform Fire Code. V–1 Oil appealed the Fire Chief's order and sought a variance from the Wyoming Council on Fire Prevention, Electrical Safety, and Energy Efficiency in Buildings (State Council). The State Council upheld the order of the Fire Chief and refused to consider V–1 Oil's request for a variance. The district court affirmed the State Council decision.

We reverse and remand.

## I. FACTS

V–1 Oil owns and operates a service station and convenience store in Rock Springs, Wyoming. As part of its business, V–1 Oil sells and dispenses propane from a 500

gallon tank. Also located on the premises is an 18,000 gallon propane storage tank. The 18,000 gallon above-ground tank was placed in its present location in either the late 1970's or early 1980's to replace a 12,000 gallon tank which had been in use at the same location since 1964.

The City is a municipality organized under the laws of the State of Wyoming pertaining to first class cities. *See* W.S. 15–3–101 through 15–3–104. In 1985, the City adopted by ordinance the 1985 version of the Uniform Fire Code (UFC).[1] Approximately a year or so after adoption, Rock Springs Fire Department Inspector Dennis Washam inspected the V–1 Oil facility and determined that the large propane storage tank violated the tank capacity limitation in UFC § 82.105(a). UFC § 82.105(a) states:

> Within the limits established by law restricting the storage of liquefied petroleum gas for the protection of heavily populated or congested commercial areas, the aggregate capacity of any one installation shall not exceed 2,000 gallons water capacity, except that in particular installations this capacity limit may be altered at the discretion of the Chief after consideration of *special features* such as topographical conditions, nature of occupancy and proximity to buildings, capacity of proposed tanks, degree of private

fire protection to be provided and facilities of the local fire department. The storage of liquefied petroleum gas shall conform to the provisions of the local zoning ordinance.

(Emphasis added.)

Following Fire Inspector Washam's initial inspection, Rock Springs Fire Chief Harvey Cozad accompanied Inspector Washam to the V–1 Oil facility and together they made a visual inspection of the premises and surrounding area. Their investigation of the area was neither elaborate, systematic nor formalized. Without the benefit of having conducted a hearing and simply on the basis of his visit to the premises, Chief Cozad concluded that the long-existent LPG tank violated UFC § 82.–105(a). After applying what he called a "common sense" interpretation to such terms as "heavily populated or congested commercial area," the Fire Chief determined that none of the UFC § 82.105(a) "special features" were present which would compel him to make an exception to the 2,000 gallon capacity limitation. Consequently, on January 27, 1987, Fire Inspector Washam—acting at the direction of Fire Chief Cozad—issued a Notice of Violation to V–1 Oil by finding the 18,000 gallon

---

1. Since we reverse and remand, problems of record and documentation which perplex this court will be discussed to avoid reappearance if another appeal should hereafter result in this proceeding. The 1985 UFC as adopted by city ordinance enactment is not included in this record. Attachments to the appellate briefs provide the only source of documentation which include limited segments of the UFC's 421–page detail.

The 1985 edition of the UFC as a general publication, library identification KF3975.I58 1985, included in text a proposed ordinance for the enactment by city or governmental officials by reference. That proposal provided two items within its thirteen sections of particular interest for this litigation. UFC § 5 provided:

**ESTABLISHMENTS OF LIMITS IN WHICH STORAGE OF LIQUEFIED PETROLEUM GASES IS TO BE RESTRICTED.**

The limits referred to in Section 82.105(a) of the Uniform Fire Code, in which storage of liquefied petroleum gas is restricted, are hereby established as follows:

**NOTE:** These limits should include the heavily populated and the congested commercial areas. These limits should be detailed unless such limits have been established by other regulations.

Additionally, UFC § 8 provided:

**APPEALS.**

Whenever the chief disapproves an application or refuses to grant a permit applied for, or when it is claimed that the provisions of the code do not apply or that the true intent and meaning of the code have been misconstrued or wrongly interpreted, the applicant may appeal from the decision of the chief to

_____ within 30 days from the date of the decision appealed.

Since the date of consideration of this facility by the City authorities, a new Compiled Ordinances of the City of Rock Springs, Wyoming (1989) has been adopted. Further consideration of action to force the removal of V–1 Oil's LPG storage facility should now be conducted within established geographical boundary designations and other criteria provided in the most current city ordinance.

capacity tank violated UFC § 82.105(a). Removal was ordered.

In response, V–1 Oil objected to the removal order and informed the City that its Notice of Violation did not contain a provision for an appeal. Since it had not previously considered an appeal from a Fire Code violation, the City discovered that it had failed to establish a local board of appeals pursuant to UFC § 2.302 (1985). UFC § 2.302 states:

> In order to determine the suitability of alternate materials and type of construction and to provide for reasonable interpretations of the provisions of this code, *there shall be and hereby is created* a Board of Appeals consisting of five members who are qualified by experience and training to pass upon pertinent matters. The fire chief shall be an ex officio member and shall act as secretary of the board. The Board of Appeals *shall be appointed* by the executive body and shall hold office at their pleasure. The board shall adopt reasonable rules and regulations for conducting its investigations and shall render all decisions and findings in writing to the fire chief, with a duplicate copy to the appellant, and may recommend to the executive body such new legislation as is consistent therewith.[2]

(Emphasis added.)

Lacking the local appeal board which should have been established pursuant to UFC § 2.302, the City determined that the State Council would be the proper body to hear an appeal. Thus, a second Notice of Violation giving V–1 Oil sixty days to remove its tank was issued on July 6, 1988. The second notice informed V–1 Oil that the adverse decision of the Fire Chief could be appealed to the State Council. Following issuance of the second notice, the Fire Chief contacted a private fire protection consulting engineer for independent verification that the violation determination was correct.

On July 22, 1988, V–1 Oil filed a notice of appeal with the State Council requesting a hearing. Six days later, V–1 Oil filed a supplemental request with the State Council for a variance to allow V–1 Oil to continue operating its facility with the 18,000 gallon propane tank in place. Though the record of correspondence between the parties in this case is incomplete (i.e., V–1 Oil's August 4, 1988 letter to the Attorney General's office as referenced in the record at page 212 is not contained in the record), it appears that there was considerable uncertainty and much debate as to what jurisdiction, if any, the State Council would have to consider V–1 Oil's variance request.

V–1 Oil argued that since the City had failed to create a local board of appeals pursuant to UFC § 2.302, then W.S. 35–9–106(c) (1988) established a right for V–1 Oil to have the State Council consider its variance request. W.S. 35–9–106(c) states:

> Except as provided under W.S. 35–9–124(a)(ii) [dealing with the right of the Electrical Board to hear appeals and grant variances from Council rules and regulations], the council shall hear appeals to determine the suitability of alternate materials and type of construction and to interpret and grant variances from rules and regulations of the council.

On the other hand, the assistant attorney general responsible for advising the State Council felt that all the State Council could do in this case was to decide the merits of V–1 Oil's appeal without considering the variance request. The assistant attorney general relied on W.S. 35–9–121(c) (1988) which states:

> A municipality or county which has enforcement authority under this section

---

**2.** The City has, since all of this litigation occurred, established a Building Codes Appeal Board by City Ordinance No. 91–02, enacted April 2, 1991. Unfortunately, it is unclear whether that board has extended authority to consider a City Ordinance Section 7–108.3(f) UFC appeal. Any reference to the UFC is noticeably absent from the lists of Uniform Codes (i.e., Uniform Building Code, Uniform Mechani-

cal Code, Uniform Plumbing Code, Uniform Housing Code, Uniform Code for Abatement of Dangerous Buildings, Uniform Sign Code, Uniform Swimming Pool, Spa and Hot Tub Codes) specifically mentioned in Sections 7.108.1 and 7.108.2 of the Rock Springs City Ordinances. Nothing else demonstrates that another appeal board as required by the UFC has been established.

may create its own appeals boards to determine the suitability of alternate materials and types of construction. The boards shall be appointed and removed by the governing body of the municipality or county. The council on fire prevention, electrical safety and energy efficiency in buildings and the electrical board shall serve as appeals boards for a municipality or county that has not created an appeals board under this subsection.[3]

In an August 10, 1988 letter to V–1 Oil's counsel, the assistant attorney general indicated that W.S. 35–9–106(c) only allows the State Council to grant variances from its own rules and regulations—not from local enforcement district rules and regulations. Thus, it was the assistant attorney general's opinion that the State Council did not have jurisdiction to grant a variance in this case.

However, when the State Council began the hearing on V–1 Oil's appeal on December 1, 1988, it appears the assistant attorney general had changed her mind as to the applicability of W.S. 35–9–106(c). During the hearing, she advised the State Council as follows:

> As [counsel for the City and V–1 Oil] have told you[,] this matter has been deliberated for quite some time over the jurisdictional authority and who does have authority and jurisdiction over this type of situation and it is clear to me in Wyoming Statute 35–9–121(c) * * * that this Body does have authority over the questions at hand.
>
> °   *   *   *   *   *   *
>
> It is my opinion that your authority arises under statute and also under 35–9–106 which specifically authorizes this Council to grant variances from the Code.

Although the State Council began its appeal hearing on December 1, 1988, the hearing was continued until January 17, 1989 because an expert witness was unable to attend the December hearing. When the hearing was resumed in January, the State Council stated at the outset that it was meeting to determine "whether the 18,000 gallon liqu[e]fied petroleum tank is or is not in violation of the [UFC] and whether or not it meets the intent of the Code." In effect, the State Council reversed its December 1, 1988 position on jurisdiction and refused to consider V–1 Oil's variance request. Instead, the State Council conducted the hearing for the sole purpose of determining whether the Fire Chief abused his discretion or acted arbitrarily or capriciously in finding that the 18,000 gallon tank violated the UFC.

On March 27, 1989, the State Council entered its Findings of Fact, Conclusions of Law, Decision and Order. The State Council affirmed the Fire Chief's tank removal order by the unsurprising analysis that the tank was larger (18,000 gallons) than provided in the code criteria (2,000 gallons). Everyone recognized this fact from the onset and no hearing for authentication was actually required. V–1 Oil filed a Petition for Review and Request for Trial De Novo in the District Court, Third Judicial District, Sweetwater County on April 28, 1989. The district court affirmed the State Council's decision on June 22, 1990 and V–1 Oil then filed this appeal. The district court granted V–1 Oil's motions for stay of execution pending the outcome of all appellate proceedings in this matter.

## II. ISSUES

V–1 Oil states the issues for review as follows:

---

**3.** Originally, enforcement was vested in the state fire marshall, Wyo.Sess.Laws ch. 166 (1977), with delegating authority to local government agencies. W.S. 35–436.21 (1975 Cum.Supp.). Upon recodification and creation of the Department of Fire Prevention and Electrical Safety, Wyo.Sess.Laws ch. 97 (1983), local enforcement was more effectively directed by enactment of W.S. 35–9–121. The obvious purpose of the inclusion of the alternative language for appeal in W.S. 35–9–121(c) was to assure an appeal board, *e.g.,* the state agency, in the event the local unit of government did not choose to create its own appeal instrumentality. *See* 1983 Dig. of H.J., 47th Gen.Sess., at 66. Under the prior law before the 1983 decentralization of regulation, the provision for appeal was with the State Council, *see* Wyo.Sess.Laws ch. 166 (1977), W.S. 35–436.10(c) (1977), or the municipality and county-created appeal board without directive provision in case the municipality or county chose not to establish the appeal board.

I. The actions of the Council, in refusing to accept and rule on V–1's request for a variance, was arbitrary, capricious and contrary to law.

II. The Council's findings of fact, conclusions and decision was arbitrary, capricious and not based on the facts.

III. The refusal of the Fire Chief to grant a variance was arbitrary, capricious, and not supported by the facts.[4]

Because we find V–1 Oil's first issue dispositive, we need not decide whether the State Council's findings and conclusions and the Fire Chief's refusal to grant a variance were supported by substantial evidence.

## III. ANALYSIS

It is apparent from the record, the appellate briefs and the oral argument that the parties were and remain confused about the State Council's jurisdiction to consider V–1 Oil's variance request in this case. The State Council conducted what amounted to a full-blown contested case-type hearing as to the merits of V–1 Oil's appeal of the Fire Chief's decision. However, although the State Council heard expert testimony and examined the evidence submitted by V–1 Oil and the City as to tank safety and other environmental conditions surrounding tank placement, the State Council had already decided as a matter of law that it did not have jurisdiction to consider the variance request.[5]

In reviewing an administrative agency action of this sort, we are guided by the standard set forth in W.S. 16–3–114(c)(ii)(A) (1990). As a reviewing court, we are required to "[h]old unlawful and set aside agency action * * * found to be * * * not in accordance with law[.]" *Id.*

It is not clear from the record what statutory basis the State Council finally used to decide that it did not have jurisdiction to consider V–1 Oil's variance request. Without identifying a specific statutory basis for refusing the request, the State Council

---

**4.** The litigants did not consider constitutionality issues created by the application of a subsequently adopted use regulation to the existent physical structure as an improvement on the premises where danger to public health and safety is not dispositively considered. Consequently, neither do we. *See Sun Ridge Development, Inc. v. City of Cheyenne,* 787 P.2d 583 (Wyo.1990); *Cheyenne Airport Bd. v. Rogers,* 707 P.2d 717 (Wyo.1985), *dismissed* 476 U.S. 1110, 106 S.Ct. 1961, 90 L.Ed.2d 647 (1986); *First English Evangelical Lutheran Church of Glendale v. County of Los Angeles, Cal.,* 482 U.S. 304, 107 S.Ct. 2378, 96 L.Ed.2d 250 (1987), *cert. denied* 493 U.S. 1056, 110 S.Ct. 866, 107 L.Ed.2d 950 (1990).

**5.** There can be no question that the right of V–1 Oil to seek a variance from UFC compliance is significantly different than its right to appeal an adverse decision of the Fire Chief. *See United States Steel Corp. v. Wyoming Environmental Quality Council,* 575 P.2d 749 (Wyo.1978) (Thomas, J., specially concurring); 3 Anderson, American Law of Zoning 3d, § 20.02 (1986) (variance defined); and 1 Anderson, *supra,* § 6.08 at 466 (nonconforming use—elements of existing use). A variance in zoning terminology is defined as:

[A]uthorization for the construction or maintenance of a building or structure, or for the establishment or maintenance of a use of land, which is prohibited by a zoning ordinance. It is a right granted by a board of adjustment pursuant to power vested in such administrative body by statute or ordinance and is a form of administrative relief from the literal import and strict application of zoning regulations.

3 Anderson, *supra,* § 20.02 at 365 (footnotes omitted).

We do not attempt to distinguish, for the purpose of this decision, differences among conditional use, nonconforming use and variance, and especially so since the record indicates that the City has now replaced the 1985 UFC with the 1988 UFC which, according to the testimony, "is different." *See* 3 Anderson, *supra,* § 20.05 at 374, "Conditional use distinguished." See also, for differentiation, *Harding v. Board of Zoning Appeals of City of Morgantown,* 159 W.Va. 73, 219 S.E.2d 324 (1975).

This case does not present a zoning controversy, *see* W.S. 15–1–601 through 15–1–611 (1980 and 1991 Cum.Supp.), relating to city and town zoning. The appeal board provided by W.S. 35–9–121 is completely different from the zoning board of adjustment authorized to be established by W.S. 15–1–605 (1991) and, at least in present terms, also different from the Building Codes Appeal Board created by Ordinance 91–02, adopted April 2, 1991. In technical terminology, the variance discussed in this appeal is distinguishable from a zoning variance and could more accurately be described as an exception application arising from the general provisions created by the after-the-fact adoption of the UFC to a structure presently existent and in use.

simply stated in its findings and conclusions that it was considering "an appeal from a decision of a local fire chief under W.S. 35–9–121(c)" and that Fire Chief Cozad and Fire Inspector Washam "were not arbitrary[,] capricious, nor [had they] abused their discretion" in the performance of their duties. All that was really determined was the admitted fact—the tank was 18,000 gallons.

In affirming the State Council's decision, the district court identified and relied on UFC § 82.105(a) to decide that only the Fire Chief has authority to consider a variance. While UFC § 82.105(a) states that the Fire Chief may exercise his discretion in altering the tank capacity limitation at any particular installation in a heavily populated or congested area, the provision does not preempt variance consideration by either a local board of appeals or by the State Council pursuant to W.S. 35–9–106(c).

The district court's narrow interpretation of UFC § 82.105 also fails to take into account the legislative intent inherent in W.S. §§ 35–9–106(c), 35–9–121(c) and UFC § 2.302, the UFC section authorizing local appellate boards "to provide for reasonable interpretations of the provisions of this code." Although UFC § 2.302 does not explicitly vest a local appeal board with authority to consider variance requests, the "reasonable interpretation" language reflects a clear intent that the Fire Chief's discretion under UFC § 82.105(a) is not unfettered. The legislature resolved potential conflict in this regard when it enacted W.S. 35–9–121(b): "If local [fire] code provisions conflict with adopted state codes, the state code prevails." Thus, state statutes prevail over conflicting provisions in the Rock Springs version of the UFC. Regardless of the jurisdictional limitations arguably contained in UFC §§ 2.302 and 82.-105(a), a careful reading of W.S. 35–9–106(c) in conjunction with W.S. 35–9–121(c) dictates that the legislature intended the State Council to have jurisdiction in variance requests when, as here, a municipality has failed to create a local board of appeals.

When read separately, the Wyoming statutory and UFC provisions at issue in this case are not ambiguous. However, none of the provisions speak directly and independently to the particular factual situation present in this case. Thus, our primary concern is to make sense of the legislative product by reading all of the provisions in pari materia to ascertain legislative intent. *Mauler v. Titus,* 697 P.2d 303 (Wyo.1985). We have said we will "construe together statutes relating to the same subject" to avoid conflicting and confusing results. *Department of Revenue and Taxation v. Irvine,* 589 P.2d 1295, 1298 (Wyo.1979); *see also Stauffer Chemical Co. v. Curry,* 778 P.2d 1083 (Wyo. 1989).

It would be incongruous to find that the State Council *would* have the right to consider a variance request brought by a non-first class city Wyoming resident but that the State Council *would not* have similar jurisdiction if the variance request was brought by a resident of a first class city—especially when the City itself had failed to create a local board of appeals as mandated by City ordinance. If we were to accept the argument advanced by the City in this case, we would penalize a resident of Rock Springs by denying that person or business the full measure of due process and statutory protection to seek a variance accorded other Wyoming residents.

In holding that the State Council had jurisdiction to consider V–1 Oil's variance request, we rely on the following language in W.S. 35–9–106(c): "the council *shall* hear appeals * * * *to interpret and grant variances* from rules and regulations of the council." (Emphasis added.) We recognize that the mandatory language requiring the State Council to consider variances is ostensibly limited to variances "from rules and regulations of the council." The City argues that W.S. 35–9–106(c) should not apply here since the UFC provision in this case is a City ordinance and not a rule or regulation of the State Council. The problem with this reasoning is that it fails to take into account the role the State Council must assume when it substitutes as an appellate board in the absence of a local

board of appeals pursuant to W.S. 35–9–121(c). If the State Council is to function in the capacity of a local board of appeals, it must be vested with the same authority and jurisdiction to interpret local ordinance rules and regulations. Otherwise, simply assigning the title without the corresponding mantle of authority would render meaningless the statutory appeal process. This court has often said that we will assume that the legislature does not intend futile or meaningless things. *Hamlin v. Transcon Lines*, 701 P.2d 1139 (Wyo.1985). Thus, we find the legislature must have intended under the circumstances presented here that the State Council should consider variance requests where the City, for whatever reason, did not establish its own appeal procedure by naming an appeal board.

Since V–1 Oil would have had the right to seek a variance from a local board of appeals if the City *had* established such a board as mandated by UFC § 2.302, then V–1 Oil cannot be found to have sacrificed that same right to seek a variance from the State Council simply because the City ignored the mandatory requirement and failed or refused to establish a local board pursuant to UFC § 2.302 of its own ordinance. While the State Council may have acted in good faith and with the benefit of advice from the state attorney general's office, it erred in concluding as a matter of law that it could not consider V–1 Oil's variance request. Similarly, though perhaps for different reasons, the district court erred in reaching the same result. W.S. 35–9–106(c), when read in conjunction with W.S. 35–9–121(c) leads to the conclusion that the State Council in this case had jurisdiction to consider V–1 Oil's request for a variance since the State Council was acting in the absence of and in the same capacity as a local board of appeals.

Thus, since the Fire Chief never conducted a variance hearing and the State Council refused to do so upon request, V–1 Oil has been denied a basic and fundamental due process right to have its variance request heard and decided by an impartial tribunal. While V–1 Oil does not enjoy an absolute right to *obtain* a variance for its propane storage tank which preexisted enactment of the Rock Springs fire code, at the very least V–1 Oil does have a due process right to have its variance request heard and considered. *See* n. 1, *supra* and UFC § 1.103(b) relating to conditions existent when the ordinance was adopted. We hold as a matter of law and under the particular circumstances of this case that the State Council erred in deciding that it did not have jurisdiction to consider V–1 Oil's variance request. W.S. 16–3–114(c)(ii)(A).

██ In light of our decision in *Cook v. Zoning Bd. of Adjustment for the City of Laramie*, 776 P.2d 181 (Wyo.1989), we also find it necessary to discuss whether the Fire Chief should have conducted a hearing in the process of determining that V–1 Oil's tank violated the UFC. The Fire Chief's determination that the propane tank in question violated the UFC and that it did not warrant an exception due to "special features" was, in effect, a variance denial. In *Cook*, we held that "[a] variance decision must be supported by adequate findings." *Id.* at 185. Furthermore, no evidence of consideration of the "distinct hazard" criteria of UFC § 1.103(b) is provided.

In this case, because of the absence of any record as to specific findings of fact the Fire Chief made prior to concluding that the tank violated the UFC, it is impossible to know which "special features" were considered. While it may be argued [6]

---

**6.** Helpful insight is found in *Thornley v. Wyoming Highway Dept., Motor Vehicle Division*, 478 P.2d 600 (Wyo.1971). In *Thornley*, (a case dealing with the constitutionality of Wyoming's Financial Responsibility Act and the failure of the superintendent to conduct a hearing to establish potential culpability prior to driver license suspension) we said:

> Our administrative procedure act and our rules of civil procedure both contemplate administrative proceedings where there is a hearing and administrative proceedings where there is no hearing. If the legal rights, duties or privileges of a party are required by law to be determined by an agency after an opportunity for hearing, the proceeding is called a "contested case." If such hearing is

that V–1 Oil was entitled at the very least to an informal hearing before the Fire Chief, this much is clear: absent a hearing, the Fire Chief failed to provide *any* indication that he had considered *any* neighborhood conditions (i.e., "special features" or "distinct hazards") in the tank's vicinity. Consequently, prior to the Fire Chief's testimony at the subsequent State Council hearing, it was impossible to tell whether the Fire Chief exercised *any* discretion or professional judgment in reaching his decision or whether he simply applied a literal reading of the 2,000 gallon tank capacity language in UFC § 82.105(a).

Nothing in this record demonstrates that either a variance or fire code modification application has ever been considered throughout the course of these proceedings. The second order to remove was filed July 6, 1988 and more than three years have now passed. By this time, it appears from the record that a new UFC has been adopted.[7] Fashioning any judicial remedy following reversal presents factual uncertainties unresolvable on this record.

## IV.  CONCLUSION

This case is reversed and remanded to the district court to be returned for the Rock Springs City Fire Chief to determine whether he wishes to recommence the proceedings based on the 1988 notice to re-

---

not required, the proceeding is a non-contested case. * * *
*   *   *   *   *   *
[Though *Thornley* was not a "contested case"], [t]hat is not to say, however, that the superintendent should not grant a hearing, in his discretion, if and when a need therefor has been shown.

*Id.* at 603.

In some respects, this case is analogous to *Thornley.* Here, the Fire Chief had a duty and responsibility to determine whether any UFC § 82.105(a) "special features" existed which might warrant alteration of the tank capacity limitation. Both of the violation notices sent to V–1 Oil by the Fire Chief contained nothing more than a mere statement that, "[t]he tank(s) at this location well exceeds the 2,000 gallon limit." The conclusive finding of a violation absent any showing that the Fire Chief considered the "special features" pursuant to UFC § 82.105(a) does not create a record from which an aggrieved party may appeal.

move or whether he desires to issue another notice. If objection is taken to any notice given pursuant to the UFC, the Fire Chief shall provide an opportunity for V–1 Oil to object and present evidence which might justify non-enforcement or issuance of a variance under the provisions of the UFC which are now in effect. Any appeal or subsequent variance request will be considered by the applicable City appeal board if one has been established and, if not, then again by the Wyoming Council on Fire Prevention, Electrical Safety, and Energy Efficiency in Buildings pursuant to the provisions of W.S. §§ 35–9–106(c) and 35–9–121(c) as considered by this opinion and the UFC provisions presently in effect.

Reversed and remanded.

CARDINE, J., files a dissenting opinion.

CARDINE, Justice, dissenting.

I dissent.

We put form over substance in this reversal and remand which will require the parties to go through the same procedure (order, notice, contested case hearing, and appeal) just completed. If the Board, after hearing the experts and all evidence, had found the fire chief acted arbitrarily and capriciously, it would have vacated the order of removal, the effect being to allow the tank to remain. The effect would be a variance. The Board, after hearing the

---

7.  For the most part, a casual examination of the 1988 UFC does not reveal many significant differences in effect and terminology relative to the proposed model ordinances: "Scope" and "Existing Conditions," UFC § 1.103(a) and (b); "Establishments of Limits in Which Storage of Liquefied Petroleum Gases is to be Restricted," UFC § 5; "Appeals," UFC § 8; and "Board of Appeals," UFC § 2.303. However, it is apparent that a significant difference exists between UFC § 82.105(a) (1985) regarding aggregate capacity and UFC § 82.104(b) (1988), "Maximum Capacity Within Established Limits." With regard to the present issue, the significant difference is the removal in the latter edition of the alternative capacity criteria within the discretion of the chief. The 1988 UFC limits the size of the tank within the appropriately designated area to a maximum capacity of the 2,000 gallons *without exception.*

evidence, affirmed the fire chief's action, and so should we.

There is substantial support for the Board's finding that the fire chief had not acted in an arbitrary and capricious manner. The majority acknowledges that the fire chief applied a rule of "common sense." The rule of "common sense" has heretofore been urged upon this Court with considerable vigor. *Brown v. State*, 816 P.2d 818 (Wyo.1991) (Urbigkit, C.J., dissenting). Having had the foresight to apply this rule, the fire chief's determination of removal requirement is surely entitled to considerable weight.